SMITH v. CITY OF SEDALIA, Appellant.

Division One, November 14, 1899.

1. **New Trial:** FAILURE TO SPECIFY GROUND. Although the statute requires the trial court to specify the grounds on which it grants a new trial, yet, as the statute itself does not render the order granting the new trial invalid because it does not contain a recital of the ground therefor, this court will not adjudge the order invalid.

2. **Nuisance:** PRESCRIPTIVE RIGHT: STATUTE OF LIMITATIONS. The user upon which a city may found a prescriptive right to empty sewage upon an adjoining farm, must be *adverse* in its character for ten years before it can claim that it has established the right, under the statute of limitations by long usage, to maintain the nuisance. Mere permissive user can not create such a right.

3. ———: ———: BURDEN. The burden is on him who asserts the right to show not only the user but that it was exercised adversely and under a claim of right.

4. ———: ———: EXTENT OF USER. The user relied on by the city as a defense must be of the same general character during the period the city claims to have exercised it, and exercised to as great an extent as it was at the time the suit was brought. It must also have been exercised substantially in as offensive a degree.

5. ———: ———: WORDS DEFINING ADVERSE USER. An instruction that told the jury if the drainage was "without objection or hindrance from the owners" of the land, etc., did not sufficiently define adverse user. Those words are not inconsistent with a permissive use.

6. ———: ———: BY PRIVATE PERSONS. User by private citizens who for ten years committed nuisances ˙ which polluted the stream on a ˙farm adjoining a city, can not establish a prescriptive right in the city to turn its sewage into that stream; and evidence that such private persons had cast offensive matter into a natural tributary of the stream has no place in the case except as bearing on the question of damages.

7. ———: INCOMPLETE: SUBSEQUENT PURCHASER: FIVE YEARS STATUTE. The five years statute of limitations applies where the injury to the land caused by the nuisance is a permanent one, complete and manifest from the beginning, and susceptible of being measured in damages once for ˙ all, and then the right of action accrues to the then owner. But when the extent of the injury at the time the sewerage was constructed, could not have been for all time estimated, but was increased from time to time by an enlargement of the mains, and by other means, no instruction as to that statute, or as to the accruement of the action to a previous owner, should be given.

8. ———: PRACTICE: INSTRUCTIONS WITHOUT EVIDENCE. An instruction should not be given unless there is evidece on which to base it.

9. Public Nuisance: SEWAGE: INJURY TO PUBLIC GENERALLY. Though a creek into which a city has emptied its sewage may flow through the farms of several persons, and though all may suffer damage of the same character from the pollution in the stream, but each in a different degree, yet this does not convert the wrong into a public nuisance, and hence each may recover the damage he suffers though it differ only in degree from that suffered by the others.

10. ———: PRESCRIPTIVE RIGHT.  No one can acquire a prescriptive right to maintain a public nuisance.

11. **Sewage:** NATURAL DRAINAGE: STATUTE.  The fact that sewers are necessary to a city and that the statute directs that they shall follow as nearly as practicable the natural drainage of the country, afford no justification for the action of a city in emptying its sewers on the land of an individual to his damage.

12. ———: ———: ———: DAMAGE TO PRIVATE PROPERTY: LEGISLATIVE AUTHORITY.  The legislature can not confer on a city authority to injure private property for the public good without due compensation.

*Appeal from the Pettis Circuit Court.*—HON. GEORGE
F. LONGAN, Judge.

AFFIRMED.

JOHN CASHMAN for appellant.

(1)  The judgment of the circuit court granting the plaintiff a new trial must be reversed.  That court failed to comply with section 2241, R. S. 1889, which provides that every order allowing a new trial shall specify of record the ground or grounds on which said new trial is granted.  Miller v. Madison Car Co., 130 Mo. 517; Lumber Co. v. Christophel, 59 Mo. App. 80.  (2)  A new trial should not be granted except for error that is prejudicial to the substantial rights of the complaining party upon the merits of the case, and the Supreme Court will not hesitate to reverse the action of the trial court granting a new trial where no error has been committed at the trial.  Miller v. Madison Car Co., *supra*, Lumber Co. v. Christophel, *supra*, Ittner v. Hughes, 133 Mo. 679.  (3)  From the order granting a new trial no one can determine upon what ground the new trial was granted in this case.  Certainly the first, second and third grounds in the motion for a new trial are not entitled to any consideration.  The other grounds laid in the motion relate to the instructions.  Instructions numbered three, four, six, eight and nine properly

declared the law based upon the pleadings and the evidence in the case. This being true and the jury having found for the defendant it was error for the court to set aside the verdict. (4) Instruction numbered 3 properly declared the law on the statute of limitations. Ten years continuous use gave the defendant a right by prescription. James v. City of Kansas, 83 Mo. 567; McGowan v. Railroad, 23 Mo. App. 203; Bird v. Railroad, 30 Mo. App. 365; Bunten v. Railroad, 50 Mo. App. 414; Powers v. Railroad, 71 Mo. App, 540; Howard Co. v. Railroad, 130 Mo. 652; Wood on Lim. (2 Ed), sec. 181. (5) Instruction numbered 9 properly declared the law as to the right of the plaintiff to recover, for if a nuisance is not special or peculiar in kind to the party complaining, from that sustained by others owning land in the same general locality, then the party complaining can not recover. Rude v. St. Louis, 93 Mo. 408; Fairchild v. St. Louis, 98 Mo. 85; Canman v. St. Louis, 97 Mo. 92; Edmondson v. Moberly, 98 Mo. 523; Van De Vere v. Kansas City, 107 Mo. 83; Gates v. Railroad, 111 Mo. 28.

MONTGOMERY & MONTGOMERY for respondent.

(1) The third instruction given for plaintiff directs the jury to find for the defendant if they believe from the evidence that Cedar creek had been used for more than ten years continuously before the institution of this suit for the purpose of drainage or carrying off the sewage from that part of the city which naturally drained into it without objection or hindrance from those owning the farm now owned by plaintiff. This instruction does not properly declare the law. First. It fails to direct that the defendant's use must have been to the same extent for more than ten years prior to the institution of this suit as it was when the suit was begun. Otherwise a trivial nuisance, harmless for ten years, could be made the basis for unbearable and very injurious damage. It is not

the extent of the claim of the right but the extent of its actual exercise which controls; a claim of right to do more than that which has been done affects nothing on the question of prescription.   This principle lies at the foundation of the right to invoke the doctrine of prescription in support of nuisances of this kind.   16 Am. and Eng. Ency. of Law, 999; Wood on Nuis. (1 Ed.), sec. 705; Wood on Lim., sec. 182; Holsman v. Boiling, S. P. B. Co., 14 N. J. Eq. 345; Postlewaite v. Payne, 8 Ind. 104; Janssen v. Lammers, 29 Wis. 89; Russel v. Scott, 9 Cow. 278; Round Tree v. Brantley, 34 Ala. 544; Right v. Moore, 38 Ala. 593; Adwine v. Lyford, 9 N. H. 502; Baldwin v. Calkins, 10 Wend. 169; Carlisle v. Cooper, 21 N. J. Eq. 576.   Second.   The use of the words, "without objection or hindrance from those owning the farm now owned by plaintiff," was improper.   There is no evidence of any agreement with or without any consideration with the plaintiff or his grantor for permission to run the sewer into this stream or over plaintiff's land.   No right became vested in defendant by the mere silent acquiescence of the owner of the premises in permitting at the first, the drainage to be carried on to the premises and afterwards the continuance of the nuisance; at best it was only a license revokable at the pleasure of the owner of the land.   Pitzman v. Boyce, 111 Mo. 387; Burton v. Railroad, 50 Mo. App. 426; House v. Montgomery, 19 Mo. App. 170; Cobb v. Smith, 38 Wis. 21.   (2)   The fourth instruction given for defendant is more faulty than the preceding one.   It declares the right of the city to maintain the nuisance upon the sole ground of uninterrupted possession or use for more than ten years.   It wholly omits to instruct the jury that they must find such user or possession was adverse and with a claim of right.   The two instructions are wrong on the question of limitation, as under the facts, the possession or use was, at the time of the institution of the suit and at all times prior thereto, only permissive, and, being so, if the city ever claimed to exercise the use as a right, the burden was on them

to show they had done so and had brought home notice to the owner of that fact, and after that had exercised the use for ten years continuously. There was not a particle of such evidence. Pitzman v. Boyce, *supra*; Vaughan v. Rupple, 69 Mo. App. 587. (3) All of the evidence upon both sides showed that the drainage provided by the city as it existed prior to plaintiff's purchase, was not injurious, or very slightly so, but after plaintiff's purchase, the sewer system was put in force and the use extended, enlarged and changed every year since. The structure or work causing the injury must be a completed and finished work and the damage occasioned thereby such that the plaintiff could have sued for and recovered entire damages, or damages in the future from the ordinary use of such a structure, otherwise plaintiff would not be precluded from recovering for such damages. Wood on Lim., secs. 180-182; Wood on Nuis., secs. 705, 706; James v. Kansas City, 83 Mo. 570; Holsman v. Boiling, S. P. B. Co., 14 N. J. Eq. 345; Rogers v. Stoever, 24 Pa. St. 186; Paddock v. Somes, 102 Mo. 238; Village of Dwight v. Hayes, 37 N. E. Rep. 218. (4) The record does not disclose the grounds upon which the court set aside the verdict and gave a new trial but such action is fully warranted under the facts in this' cause, by the action of the jury in wholly disregarding the admitted facts and finding for defendant under instructions numbered 8 and 10. Paddock v. Somes, 102 Mo. 239. (5) The instruction given for defendant and numbered 9 directs the jury that, although they may believe the discharge of the sewer into the stream and upon the land of plaintiff, amounted to a nuisance and to plaintiff's great damage, yet he can not recover except for such injury as is peculiar to him, "being such as is different in kind and not simply in degree from that sustained by other persons owning lands in the same general locality." This is not the law since the adoption of our present Constitution. Mining Co. v. Joplin, 124 Mo. 137; Van De Vere v. Kansas City, 107 Mo. 91; Paddock v. Somes, 102

Mo. 238; Seifort v. Brooklyn, 101 N. Y. 139; Railroad v. Fifth Bap. Ch. 108 U. S. 377.   If this is a public nuisance, then this instruction conflicts directly with the instructions given for defendant which are based on the theory that it is a private nuisance.   If it is a public nuisance the defendant could never gain prescriptive immunity, and the other instructions for defendant are upon the right acquired by limitation. 16 Am. and Eng. Ency. of Law, 995; Wood on Nuis. (1 Ed.), sec. 724; Cooley on Torts (2 Ed.), p. 731; Funk v. St. Louis, 122 Mo. 139; Givens v. Van Studiford, 86 Mo. 158; Wood on Nuis. (2 Ed.), secs. 736, 737; Glessner v. Anheuser Busch, etc., 100 Mo. 516; Edmonson v. Moberly, 98 Mo. 526.   But under the authorities cited it was not necessary for plaintiff to prove any special damages.   His rights have been wrongfully invaded and he is entitled to recover his damages and to abate the nuisance.   Webb's Pallock on Torts, p. 491; Paddock v. Somes, *supra.*   These damages are those actually sustained by plaintiff, including any diminution of rentals down to the time of the institution of this suit.   Carson v. Springfield, 53 Mo. App. 297; Pinney v. Berry, 61 Mo. 360; Brown v. Railroad, 80 Mo. 457; Ittner v. Hughes, 133 Mo. 690.

VALLIANT, J.—This is a suit for damages against the city of Sedalia for the alleged wrongful pollution of the water of a natural stream which flows through the plaintiff's farm.

The petition alleges that the plaintiff owns a farm adjoining the city, through which flows Cedar creek, a stream affording an abundant supply of water for stock and other farm purposes, which, until the injury complained of, was fresh, pure and wholesome, and greatly enhanced the value of the land and the enjoyment of its use and occupancy; but that the defendant city had constructed a system of sewers which collected and carried the sewage of the city and discharged

it into the creek a short distance from where it enters plaintiff's land, and by that means so polluted the water of the stream, as it came down on plaintiff's land, that it was foul, unwholesome and unfit for use by man or beast, and in its turn polluted the atmosphere so that it was rendered offensive and injurious to the health of the occupants of the farm. Damages are sought for the depreciation of the value of the farm and of its rental value.

The answer pleads the several acts of the General Assembly under which the defendant was incorporated, and its charter from time to time amended, beginning with the act of 1861 down to the act of 1873, and the final organization as a city of the third class under the general statutes, in 1886; that during the period of its existence it had so grown that at the date of the suit it was a city of 20,000 inhabitants; that Cedar creek was the natural drain for the water falling on a large part of the area of the city, and the sewers as constructed do not carry into Cedar creek sewage or water from any territory other than that which naturally drains into the creek; that for more than twenty years prior to the institution of this suit there were sewers constructed in the city by its authority and consent, such as are complained of in the petition, which gathered the sewage and surface water and discharged the same into the creek and down on and across the land now owned by plaintiff; and from time to time those sewers and sewer systems were enlarged and extended and new sewers were constructed and added to the others, until the present system now in use was brought into existence. So defendant says it has by long usage acquired the right to use Cedar creek for the purpose of carrying its sewage, and the plaintiff's right is barred by the statute of limitations of ten years, and that if a right of action to any one ever accrued it was to the person who owned the land when the city began to so use the creek, and not to the plaintiff. The answer denies

that the water is polluted or that plaintiff's property is injured.

The petition concludes not only with a prayer for judgment for damages, but also for an injunction to restrain defendant from further committing the alleged nuisance complained of. But the petition contains but one count, and that is shaped as an action at law for damages, and the cause was tried as such. An injunction issues out of a suit in equity, and if plaintiff had really intended to ask equitable relief he should have framed a count substantially as a bill in equity.

We will treat the case as the parties and the trial court treated it, that is, as an action at law only.

The evidence on the part of plaintiff tended to prove that he bought the land mentioned in the petition in 1889, that it is a highly improved and valuable farm of about 400 acres to the north of and adjoining the city of Sedalia, a small part of the southern end being within the city limits; that Cedar creek runs through the farm for a distance, following its meanderings, of about a mile, affording a sufficient supply of water for a stock farm, to which use it was principally devoted, and for other farm purposes; the residence is about 200 yards from the creek; that in 1887 the city passed an ordinance establishing a general sewer system under which the main sewer now complained of was constructed, which then emptied at the Missouri Pacific railroad track, about a mile south of its present terminus, and that was the situation when the plaintiff bought in 1889; at that time the water was clear, and there was no odor from the creek, but it could be detected that some foreign element was in the water; in 1888 the main sewer was enlarged and in 1891 extended in the direction of plaintiff's farm, and again in 1893, until it reached the main channel of Cedar creek about 200 yards from plaintiff's land; that beginning in 1889, and continuing to 1895, the city constructed district sewers, eleven in number, emptying into the main sewer above mentioned; that until 1891, when the first

Smith v. Sedalia.

extension of the main sewer in the direction of plaintiff's farm was made, much of the offensive character of the sewage was dissipated in the open air before it reached the plaintiff's land, although even then an examination of the water in the creek showed contamination, but that after the extension of 1891 and the second extension of 1893, with the addition of the several district sewers above mentioned, the water became entirely unfit for use and dangerous not only to the cattle, but also the health and comfort of the tenants of the farm; that in 1893 plaintiff made oral complaint, and in 1894 written complaint to the city officers. of the same, but without avail. There was also testimony for the plaintiff tending to show the depreciation of the rentals and value of the land within the periods complained of. This suit was begun in 1895.

It was admitted that Cedar creek was the natural drain for all that district in the city which now drains and empties its sewage into it through the sewerage complained of. On the part of the defendant the testimony tended to prove that as early as 1873 the city built a sewer for surface drainage which emptied about a mile from plaintiff's land, but the output of which, following natural courses, reached Cedar creek; and the city in 1874 authorized private persons to build private sewers for surface drainage, emptying into that sewer; in 1877 the city authorized certain persons to build a sewer for drainage from Lamine street to Moniteau avenue, with which persons so desiring were allowed to make connections for their private drains upon payment of a stipulated amount; in 1882 a similar authority was granted another person to construct a sewer on Broadway; in 1886 the gas company built a sewer which emptied on the open ground near its works; in 1875 and 1876 there was a soap factory in the city just north of the railroad tracks, whose offensive off-cast washed in the course of natural drainage into Cedar creek, but the city interferred and put a stop to this in a year or two; there were also,

about this time, several slaughter houses in the city limits on a branch of Cedar creek, about a mile from the land now owned by plaintiff, but these were all closed in 1884 by injunctions from the circuit court at the suit of citizens; the testimony of defendant also tended to prove that the water on the plaintiff's farm was not polluted to the offensive or dangerous degree that plaintiff's testimony tended to show it to be.

The theory of the instructions given by the court at the request of the plaintiff was that by the construction of private sewers by permission of the city which emptied into natural drains that carried the output into Cedar creek, the city did not acquire the right to construct its system of sewers to discharge their offensive contents into the creek to the plaintiff's injury, nor did the fact that plaintiff bought the land after the city had adopted the sewer system and constructed it in part, preclude the plaintiff from recovery for damages he has sustained after his purchase, and that the fact that the sewer system may have been in operation, with offensive consequences, for five years before the bringing of this suit, did not preclude recovery within the scope of other instructions, nor did the fact that a system of sewers was necessary to the city and that there was no other natural or convenient channel than the one in question, and that it would be troublesome or expensive to dispose of the sewage without creating a nuisance, justify the collecting and emptying of the sewage on or near the plaintiff's premises. The instructions placed the plaintiff's measure of damages at the depreciation of rental value within five years before the commencement of the suit, and permanent injury to the value of the farm.

At the request of the defendant the court gave the following instructions:

A. If the stream in question was used for more than ten years before the bringing of this action continuously by the defendant city for the purpose of drainage or carrying off the sewage from the part of said city which naturally drained

into the same, without objection or hindrance from those owning the farm now owned by the plaintiff, then the city and the inhabitants of the same have acquired a right to the use of said stream for carrying off the drainage and sewage from said part of defendant city, and the verdict will be for the defendant, unless the jury find that defendant has, within ten years before the bringing of this suit, caused the sewage and drainage from other territory than that naturally drained into said stream, to be carried into the same, and this to the damage of the plaintiff.

B.    Although the jury may believe from the evidence that the use of the water course in question as it has been and is being used, was a nuisance when first begun, yet if said use has continued uninterrupted [by the city of Sedalia] for more than ten years next before the bringing of this action, the plaintiff can not now complain of the same, and the verdict will be for the defendant.

This was asked without the words in brackets, "by the city of Sedalia," but the court inserted said words and gave it of his own motion, to which change defendant excepted at the time.

C.    Although the jury may believe from the evidence that the use of the water course in question was or is injurious to the land now owned by plaintiff or to the owner thereof, yet if the jury further believe from the evidence that before the plaintiff became the owner of said land, said use had become permanent, that is, so fixed that without human labor it would continue, and that there was then no present intention of changing or abandoning said use, so as to avoid further injury to said land and its owner, then said injury is to be regarded as permanent and an injury to the land itself, and only to be compensated for once, and that compensation was due to the one who owned the land before the plaintiff and not to the plaintiff, and the plaintiff can not recover therefor.

Smith v. Sedalia.

D.  If the jury believe from the evidence that the sewage discharged into the water course in question comes only from the part of the city of Sedalia which naturally drains into said stream, and if the jury further believe from ·the evidence that without the construction of sewers by the defendant city, the natural drainage into said streams would constitute a nuisance to the extent proven to exist at the time of bringing this suit, then the plaintiff can not recover and the verdict will be for the defendant.

E.  Although the jury may believe that the discharge of sewage into the stream in question amounts to a nuisance, yet the plaintiff can not recover unless the jury further find that the damage, if any, suffered by plaintiff is peculiar to him, being such as is different in kind and not simply in degree from that sustained by other persons owning land in the same general locality.

And of its own motion the court gave the following:

F.  The court instructs the jury that if they find from the evidence that the natural drainage into the water course in question together with the drainage from the sewers built or constructed by individuals, prior to the construction of the sewer by the city, constitute a nuisance in kind and extent with that existing at the time of bringing this suit by plaintiff, then your verdict should be for the defendant, and if you find from the evidence that this drainage did not constitute such nuisance then in estimating the damages plaintiff has sustained, if you find he has sustained any, you must take into consideration the natural drainage and the drainage from the sewers built as aforesaid by individuals prior to the building of the sewer by the city, and give him only such damages as is in excess of the damages already sustained by reason of said natural drainage and drainage from said individual sewers.

Exceptions were preserved on both sides.

There was a verdict for defendant, a motion for a new

trial by plaintiff, which was sustained by the court, and from that order defendant appeals.

I.    The order of record granting the new trial fails to specify the ground on which it was granted, as required by section 2241, R. S. 1889, and that is the first assignment of error upon which appellant asks a reversal of the judgment. The specifying in the record of the ground on which a new trial is granted was first required by the Act of 1887, amending section 3705, R. S. 1879, which in other respects is the same as section 2241, R. S. 1889. The original purpose of that section was to limit the power of the court in granting new trials for errors in a matter of fact. But unless the record shows upon what ground a first new trial is granted, the ground for the action of the trial court in granting a new trial a second or third time would be difficult if not impossible to ascertain, when the propriety of the action is questioned in an appellate court. It was doubtless to overcome this difficulty that the amendment of 1887 was enacted. This is not the first case that has come before this court since the adoption of the amendment in which its requirement has been disregarded, that is, in which a new trial has been granted without specifying the ground for the same. [Hewett v. Steele, 118 Mo. 463; Bank v. Wood, 124 Mo. 72.] But we have never treated a failure to observe this direction as reversible error. The omission is liable to arise through the carelessness of the clerk and oversight of the judge and of the attorneys in the case on both sides. The statute itself does not render the order granting the new trial invalid for failure to observe this requirement and we can not so adjudge it.

II.    The propriety of the action of the trial court in granting a new trial is the only subject for our consideration on the review of this record.

The instructions given on the request of the plaintiff as briefly summarized in the foregoing statement present in the main the correct theory of the law, but the instructions given

at the request of the defendant afford ground for affirming the action of the circuit court in granting a new trial.

The theory of the defense advanced both in the answer and instructions, is that the city has acquired by long use a prescriptive right to empty its sewage into Cedar creek. That a prescriptive right to maintain a nuisance of the kind complained of by the plaintiff in this case may be acquired, is a well established principle of law.

The period requisite to establish such right is that which under the statute of limitations bars a right of entry which in this State is ten years. [James v. City of Kansas, 83 Mo. 567; Howard County v. Railroad, 130 Mo. 652.] The user, however, upon which the prescriptive right is founded must be adverse in its character; mere permissive user can not create such a right. The burden is upon him who asserts the right to show not only the user but that it was exercised adversely and under a claim of right. [Pitzman v. Boyce, 111 Mo. 393.] And the user relied upon must not only be of the same general character, but must have been exercised substantially in as offensive degree and to as great an extent as at the time the suit is brought. [Wood on Lim. (2 Ed.), sec. 182; Wright & Rice v. Moore, 38 Ala. 593; Carlisle v. Cooper, 21 N. J. Eq. 576.]

Neither the answer which attempts to set up this prescriptive right, nor the instructions given at the request of the defendant bearing upon it, comprehend all the essentials of such a right. The answer avers that Cedar creek is the natural drain for the water falling on a large district in the city, and that from the beginning of the incorporation the surface water, drainage and sewage of that district has drained into the creek; and that for more than twenty years there were sewers in the city by its permission, which gathered surface water and sewage and sent it down the creek, and that from time to time those sewers have been enlarged and extended until the present sewer system was brought into exist-

ence.    There is no averment in the answer that the sewers
complained of in the petition had existed twenty years, or ten
years, before the commencement of the suit, and the evidence
shows that there would have been no justification for such an
averment.    The instruction marked A given at the instance
of the defendant is to the effect that if for more than ten years
prior to the suit the creek had been used by the city for drain-
age or carrying off the sewage from the district which it
naturally drained, without objection from the owners of the
land, the verdict must be for the defendant, unless it appeared
that defendant by its present system was draining sewage
from other territory into it.    That is to say, if there were
sewers in the city which collected offensive matter, without
regard to the degree or quantity, and sent it down a natural
course which carried it into the creek, and this condition
existed for ten years without complaint, then the city had a
right to construct its present system of sewers, enlarge and
extend the same from 1887 to 1893, with continued addi-
tional district sewers down to 1895, and empty the whole
sewage from that area, which compasses the chief part of the
city now grown to 20,000 inhabitants, into the creek within
200 yards of plaintiff's land, and render the water unfit for
use and the atmosphere offensive and unwholesome to the
occupants of the farm.·  We can not give that proposition
our approval.    The instruction literally goes even farther
and confirms the city's prescriptive right if only the drainage
of that district was wont to go that way; but that is so pal-
pable an error that it was doubtless an inadvertence.

The term "without objection or hindrance," used in the
instruction, does not sufficiently express the adverse character
that it is necessary to give a prescriptive right.    "Without
objection or hindrance" is not inconsistent with permission.
A prescriptive right can not be acquired by user under per-
mission, howsoever long it may continue.    It must be under
claim of right and adversely exercised.    This instruction also,

in the light of the evidence, would confer on the city the prescriptive right to pollute the water course with its sewage because individuals and private concerns had for the period of ten years committed nuisances which produced more or less pollution in the stream. But one man can not build his edifice on another's foundation. The period of user by one can not establish a prescriptive right in another, unless he is successor to the rights of the other by privity of estate. Evidence that the gas company and the owners of the slaughter houses had for years cast offensive matter into a natural tributary of this stream, had nothing to do with this case except as bearing on the question of damages, as their drains were no part of the city's sewers now complained of.-

If we have rightly comprehended the evidence in this case, this instruction marked A should have been refused, even if it had correctly set forth the essentials of a prescriptive right, upon the ground that there was no evidence on which to base it. With no knowledge of the situation except that afforded by descriptions in the evidence in the record, we get the impression that the only sewers built by the city prior to those built under the ordinances of 1887 were for surface drainage and that all the other sewers before that date were private, and some if not all of them were limited to surface drainage, and that the sewer system inaugurated in 1887 was not a mere enlargement of those formerly existing, but a new and different creation. If that is the case, then there was no foundation in the evidence for an hypothesis on which to base a finding that the present system had existed for ten years before this suit was brought. But we recognize the fact that the court and jury which tried the case, and the counsel too, being familiar with the locality, were better able to comprehend the situation and apply the evidence than a mere reader of the record, therefore we do not now say that the defendant was not entitled to an instruction properly presenting the law on the subject of a prescriptive right; but in

view of the fact that the case is to be retried we call the trial court's attention to that feature of the evidence, for its enlightened consideration on the retrial, and we only now hold that the instruction marked A should not have been given because it failed to present the essentials of the law of prescriptive right in the particulars above discussed. And for the same reasons the instruction marked B should also have been refused.

III. The instruction marked C undertakes to apply to the facts of this case the proposition of law that where the trespass committed is in itself permanent, and the injury complete, the right of action accrues then, and to him who was then injured, not to a subsequent purchaser. But that is not applicable to a case of this kind. That principle is illustrated in the facts in James v. City of Kansas, 83 Mo. 567. The injury there complained of was the structure—the sewer itself—which the city had thirteen years before built on plaintiff's land, and which, when plaintiff, after that lapse of time, came to build a house, was found to interfere with the economical building of the foundation. It was held that that injury was a permanent one manifest from the beginning, and susceptible of being measured in damages once for all and suit on it was barred in five years. But the nature of this injury is very different. True it was manifest in 1887 that the natural result of the sewerage then being constructed would be to cast sewage into a drain that would bring it to the land now owned by plaintiff, and when plaintiff bought the land in 1889 that result had to some degree been accomplished, but the extent of the injury even with the sewers as then constructed could not have been for all time estimated; besides, the sewage was then discharged at a very much greater distance from the plaintiff's land and was exposed in its flow to the open air before it entered the plaintiff's premises. And in addition to this, the main sewer was enlarged in 1888, extended in 1891 and again in 1893, and from July,

1889 to August, 1895, eleven district sewers were constructed and turned into the main sewer. That instruction should not have been given.

IV.   It was error to have given the instruction marked D because there was no evidence on which to base it. There was no evidence upon which the jury could have based a finding that if there had been no sewers the natural drainage into the creek would have been a nuisance to the extent shown by the evidence to exist at the time of bringing this suit.

V.   The instruction marked E was inapplicable to this case. The principle intended to be expressed there, to wit, that plaintiff could recover only for damage peculiar to himself, differing in kind, not simply in degree, from that suffered by others, is applicable where complaint is made of a public nuisance, as for instance when a public street is obstructed. If the plaintiff in such case is inconvenienced only in the same way that other citizens suffer, though perhaps to a greater degree than some others, he can not recover. Examples of this doctrine are shown in Rude v. St. Louis, 93 Mo. 408; Edmondson v. Moberly, 98 Mo. 523, and other cases cited by the learned counsel for the city. But even in such cases, if the plaintiff has an interest in the matter that the public in general has not, for example, if the obstruction hinders his access to his lot abutting the street, he may recover for that injury.

But it is a misconception to treat the case made in the petition as one of a public nuisance. Though there be several landowners through whose possessions the polluted stream may flow, and all suffer damage of the same character but each of different degree, that does not convert the injurious act into a public nuisance, for it is only those individuals and not the public in general who suffer; and therefore each may recover the damage he suffers though it differs only in degree from that that others in the same class suffer.

Indeed if we should find the injury of which the plain-

tiff here complains to be a public nuisance the whole foundation must fall out of the defense, because no one can acquire a prescriptive right to maintain a public nuisance.    [Cooley on Torts (2 Ed.), pp. 730, 731; Wood on Nuis. (3 Ed.), sec. 711.]

VI.    The only criticism that the instruction given by the court of its own motion, marked E suggests, is that in its first clause it presents an hypothesis for which there is no justification in the evidence.    If there was any evidence on which to base a finding that the natural drainage and the private sewers created a nuisance in extent equal to that existing at the time of bringing this suit, it has escaped our notice.    At all events, if there was a scintilla of such evidence, it was so overcome that the trial court would have been justified in granting a new trial on that account.

VII.    The fact that sewers are necessary to a city and that the statute directs that they shall follow as nearly as practicable the natural drainage of the country, afford no justification to the action of a city in emptying its sewers on the land of an individual to his damage.    Our Constitution declares that private property shall not be taken or damaged without payment of just compensation.    The Legislature therefore could not, if it so intended, confer authority on a city to injure private property for the public good without first paying the damage.    But subject to this qualification, private interest must yield to the public good.    If it is a public necessity that the plaintiff's land be taken or damaged in order to dispose of the sewage of the defendant city, it may be so condemned according to law, but the city must first pay him the just compensation.    Such condemnation can only be made in conformity to a proceeding prescribed by statute. The issues in this case do not call for an examination of the statute to ascertain whether or not provision has already been made for the condemnation of land outside the city limits for such purpose, but it is sufficient to say that until such provi-

sion is made, if it has not been, and until condemnation has been adjudged in accordance with such provision, or the city has by contract or prescription acquired the right to do so, it is liable for the damage caused by emptying its sewers into a natural stream flowing through private property.    [Cooley on Torts (2 Ed.), p. 693; Joplin Consolidated Mining Co. v. Joplin, 124 Mo. 129.]

For the reasons above given the judgment of the circuit court sustaining the motion for a new trial is affirmed.

All concur.