[No. 14266.  Department One.  March 12, 1918.]

GEORGE JACOBS *et al., Respondents,* v. THE CITY OF
SEATTLE, *Appellant.*[1]

LIMITATION OF ACTIONS—DAMAGING PROPERTY FOR PUBLIC· USE—
ACTION FOR COMPENSATION—IMPLIED CONTRACT.  An action to re-
cover compensation for damages resulting from the operation of an
incinerator by a city, in the exercise of its power of eminent do-
main, is an action on an implied contract or liability, within Rem.
Code, § 159, subd. 3, limiting the same to three years from the time
when the right of action accrued.

SAME—ACTION FOR COMPENSATION—ACCRUAL.  The court cannot
determine as a matter of judicial knowledge, that the mere con-
struction of a city incinerator would damage plaintiff's property,
where the evidence conclusively shows that consequential damage
from its operation did not result until some later time; hence the
time when right of action therefor accrued was properly left to
the jury.

COSTS—ON APPEAL—TWO TRIALS—PREVAILING PARTY.  Respond-
ents, on being completely successful after a decision on a second
appeal sustaining their right of action, are entitled to their costs
on the first trial on which the action was erroneously dismissed,
although that trial proved abortive.

Appeal from a judgment of the superior court for
King county, Mackintosh, J., entered March 17, 1917,
upon the verdict of a jury rendered in favor of the
plaintiffs, in an action in tort.  Affirmed.

· *Hugh M. Caldwell* and *James A. Dougan,* for appel-
lant.

*Jay C. Allen,* for respondents.

PARKER, J.—The plaintiffs, Jacobs and wife, seek
recovery of compensation for damage to their real
property, caused and to be caused by the defendant,
city of Seattle, in the exercise of its power of eminent
domain, the amount of which compensation had not
been in any manner ascertained or determined prior to

[1]Reported in 171 Pac. 662.

the commencement of this action. Trial in the superior court for King county sitting with a jury resulted in verdict and judgment awarding the plaintiffs compensation in the sum of $1,000, from which the city has appealed to this court.

This is the second appeal of this case to this court. The first appeal was taken by the plaintiffs from a judgment of the superior court dismissing the case upon sustaining the city's demurrer to the plaintiffs' complaint and their electing not to plead further. That appeal was disposed of by our decision reported in 93 Wash. 171, 160 Pac. 299, L. R. A. 1917B 329, reversing the judgment of the superior court and remanding the case to that court, holding that the first cause of action of the complaint alleged facts entitling them to recover, though their second cause of action did not. The allegations of respondents' first cause of action are set out, in substance, in considerable detail in our former decision. We deem it sufficient here to state that it is therein alleged, in substance, that the city erected a garbage incinerator building and plant on a lot adjoining respondents' lot, upon which they have three dwelling houses; that the city has commenced and continues to operate its plant, causing to be brought to it large quantities of refuse and garbage which it burns therein, and in doing so causes damage to respondents' property, in that obnoxious vapors, steam, smoke, ashes and pieces of partly burned garbage are thrown over and upon respondents' property, which it threatens to continue to do, materially and permanently impairing its desirability and usefulness and lessening its value; and that the city has never acquired the right to so maintain and operate its incinerator, and thereby so damage respondents' property, by any condemnation proceeding looking to the ascertainment and payment of the damage so suffered

by respondents. Upon the remanding of the case to the superior court, following the decision of this court, the city answered respondents' first cause of action, denying the allegation of damages therein made, and pleading affirmatively that respondents' cause of action accrued more than three years prior to the commencement of this action, and is therefore barred by both the two-year and the three-year statute of limitation.

The principal contention here made in the city's behalf, to which all other contentions worthy of serious consideration are incidental, is that respondents' right of recovery is barred by the statutes of limitation. It appears from the evidence, and is conceded, that the city built its incinerator building and plant more than three years prior to the commencement of this action. The city also began to operate its plant to some extent more than three years prior to the commencement of this action. It, however, became a question in the trial of the case, according to respondents' theory, which was adopted by the trial court, when the operation of the incinerator first became such as to result in actual damage to respondents' property. This question was accordingly submitted by the court to the jury for a special finding thereon in addition to its general verdict, and in response thereto, a special verdict was returned by the jury with its general verdict, as follows:

"We, the jury find that the damage to the plaintiffs' property by reason of the operation of the defendant's incinerator commenced in May, 1912."

This action was commenced in November, 1914, which, it will be noticed, was two and one-half years after the commencement of respondents' damage as found by the jury. The evidence is conclusive that the mere building of the city's incinerator building and plant did not, and would not, result in any damage to

respondents' property, and the evidence amply sustains the special verdict that the operation of the incinerator was not such as to damage respondents' property until May, 1912, when, as the jury might well conclude from the evidence, the really damaging operation of the incinerator commenced, though it had been operated to some extent prior to that time. This we shall assume for the present was when respondents' cause of action accrued, for the purpose of determining whether or not it was barred at the expiration of two years thereafter, as contended by counsel for the city.

Let us be reminded as we proceed that this is not an action seeking recovery of damages as for a tort committed by the city, but is an action to recover compensation for damages resulting from the operation of the incinerator by the city, which it is doing, and avowedly intends to continue to do, in the exercise of its power of eminent domain, in so far as resulting damage to respondents' property is concerned. Of course, if this were an action seeking recovery of damages for the commission of a tort, and treated as such by both respondents and the city, respondents' right of action would not be barred as to damages accruing within the statutory period immediately prior to the commencement of the action. Counsel for the city carefully avoid making defense upon any such theory, but adopt the eminent domain theory upon which respondents prosecute their claim for compensation, manifestly to make sure that there shall be but one recovery, if any be had by respondents; and, also, to the end that the statute of limitation may be invoked against respondents' claim as one entire claim of compensation for the acquiring by the city of the right to so continue to operate its incinerator in the future to the damage, if any, of respondents' property. In keep-

ing with this theory of the nature of the case, the trial judge instructed the jury, in substance, that respondents' compensation, if any be awarded them, is to be measured by the difference in the market value of their property immediately before and immediately after the commencement of the damage, a measure manifestly in this case applicable only to a single permanent damage to the freehold. Our decision upon the former appeal is in entire harmony with this theory of the case.

Counsel for the city contend that the limitation applicable to respondents' cause of action is that prescribed by Rem. Code, § 165, reading as follows:

"An action for relief not hereinbefore provided for shall be commenced within two years after the cause of action shall have accrued."

While counsel for respondents contend that the three years prescribed for the commencement of the several kinds of action mentioned in Rem. Code, § 159, is applicable; relying upon subd. 3 of that section, reading as follows:

"An action upon a contract or liability, express or implied, which is not in writing, and does not arise out of any written instrument."

Does the obligation on the part of the city to pay the compensation here sought by respondents arise upon "a contract or liability . . . implied," within subd. 3 of § 159 above quoted? We are of the opinion that it does, even though that subdivision relates only to contractual obligations, as seems to be held by our own and other decisions. Having in mind that the state has granted to the city the power of eminent domain, and that the city is manifestly maintaining and operating its incinerator, and intends to continue to do so, as an exercise of that sovereign power, in so far as thereby damaging respondents' property is con-

cerned, and having in mind that the state from which the city acquired that power has, by § 16 of its constitution, guaranteed that, "No private property shall be taken or *damaged* for public or private use without just *compensation* having been first made, or paid into court for the owner," it seems to us there is but little room for arguing that the city did not impliedly promise to pay to respondents compensation for such damage as might result from its continuing operation of its incinerator, at the time such operation actually commenced to damage respondents' property. If one appropriates my goods, though his act be purely tortious, he possessing no power of eminent domain, I may sue for, and recover from him, the value of them as for a sale thereof to him upon an implied promise by him to pay therefor, which is elementary law, by what sort of logic then can it be held that a city, possessing the power of eminent domain, taking or damaging my property, not tortiously but by claim of right under its power of eminent domain, does not impliedly promise to compensate me therefor as guaranteed by the sovereign state from which the city acquired the very power it assumed to exercise in taking or damaging my property? Such has been held to be the nature of such an obligation, by the highest court in our land.

In *United States v. Great Falls Mfg. Co.*, 112 U. S. 645, there was involved the taking of private property, land and water rights, by the government in connection with the construction of a water works dam in the Potomac river, without condemnation proceedings, and the seeking of compensation therefor by the owner in a suit against the government prosecuted in the court of claims. The jurisdiction of the court of claims depending upon the obligation of the government being one arising upon implied contract, it became necessary to determine the nature of the obligation in that re-

spect. Holding that the government was liable to the owner as upon an implied contract to pay for the land and water rights taken, and that, therefore, the court of claims had jurisdiction to entertain the action against the United States, Justice Harlan, speaking for the supreme court, said:

"We are of opinion that the United States, having by its agents, proceeding under the authority of an act of Congress, taken the property of the claimant for public use, are under an obligation, imposed by the Constitution, to make compensation. The law will imply a promise to make the required compensation, where property, to which the government asserts no title, is taken, pursuant to an act of Congress, as private property to be applied for public uses. Such an implication being consistent with the constitutional duty of the government, as well as with common justice, the claimant's cause of action is one that arises out of implied contract, within the meaning of the statute which confers jurisdiction upon the Court of Claims of actions founded 'upon any contract, express or implied, with the government of the United States.'"

While that decision dealt with what seems to have been an actual taking of property rather than the mere damaging of it, we are reminded that our constitutional guaranty is that "*compensation*" shall be made when private property is "*damaged*," as well as when it is "*taken*" for public use. Manifestly there can be no difference in the nature of the city's obligation, whether it takes or damages private property for a public use, under our constitutional guaranty. We here note that the words "contracts, express or implied," used in the statute defining the jurisdiction of the court of claims, are identical in meaning with the words "contract, . . . express or implied," used in our statute of limitation, subd. 3, Rem. Code, § 159, above quoted.

In *United States v. Lynah,* 188 U. S. 445, there was involved the question of jurisdiction of the United States circuit court, dependent upon the claim of the plaintiff arising upon contract. The claim was one of compensation for the overflow and rendering valueless of the plaintiff's land by the government's improvement of the Savannah river. The law as announced in the *Great Falls Mfg. Co.* case was adhered to, the court holding that the plaintiff's right of recovery rested upon an implied promise on the part of the government to pay for the damage, which was in effect a taking of the plaintiff's land because of the extent of the damage, though the plaintiff was not divested of legal title to his land by such damaging of it, nor until compensation was made therefor. In that decision, the following decisions of the court, rendered after the *Great Falls Mfg. Co.* decision, are cited and reviewed as lending support to this view of the law: *Hollister v. Benedict Mfg. Co.,* 113 U. S. 59; *Great Falls Mfg. Co. v. Attorney General,* 124 U. S. 581; *United States v. Palmer,* 128 U. S. 262; *United States v. Berdan Fire-Arms Co.,* 156 U. S. 552; following which, at page 465, Justice Brewer, speaking for the supreme court, said:

"The government may take real estate for a post office, a court house, a fortification or a highway; or in time of war it may take merchant vessels and make them part of its naval force. But can this be done without an obligation to pay for the value of that which is so taken and appropriated? Whenever in the exercise of its governmental rights it takes property, the ownership of which it concedes to be in an individual, it impliedly promises to pay therefor. Such is the import of the cases cited as well as of many others."

In the case before us, the question is presented in substance exactly as in the *Great Falls Mfg. Co.* and *Lynah* cases, above quoted from, in that title to the

property there taken and here damaged was, and is conceded to be, in the plaintiffs, without any claim of right on the part of the government or the city to take or damage the property without compensation.

This court, in *Kincaid v. Seattle,* 74 Wash. 617, 134 Pac. 504, 135 Pac. 820, expressed views quite in harmony with those of the supreme court of the United States upon this subject. Though not involving our statutes of limitation, the decision does deal with the nature of a claim of compensation for damages resulting from an act of the city done in the exercise of its power of eminent domain. The question was as to the necessity of the plaintiff filing his claim of compensation with the city as a prerequisite to his right to sue in the courts thereon. At page 621, Judge Chadwick, speaking for the court, said:

"Having the right to take, a municipality, whatever its procedure or even lack of procedure, is not a wrong-doer. The remedy of the one whose property is taken is immaterial so long as it leads to compensation as provided in the constitution. The city is bound to make compensation under a compact no less formal than the constitution itself, and it cannot defeat this constitutional right by a charter provision or an ordinance, nor can the legislature take it away by any arbitrary requirement, although we may admit that it could, as in all other cases, fix a time within which an action must be brought to recover damages that have not been first ascertained and paid. The city must be held to adopt the guarantee of the constitution and make it its promise, for we know of no law that will impute to the city, when exercising the sovereign power of the state, a wilful intention to disregard the right of a citizen."

The logic of that decision is that the claim was not required to be filed with the city as a prerequisite to the right to sue in the courts thereon, because it did not rest upon tort, nor was it a claim for damage,

strictly speaking, growing out of a contract or a breach thereof; but it was a claim for compensation which the city by its act, done in the exercise of its power of eminent domain, impliedly promised to pay.

The word "damage" has been often loosely used as descriptive of the recovery an owner becomes entitled to because of the exercise of the power of eminent domain resulting in damaging instead of the taking of his property. It seems to us that the word has not been so used in its proper legal sense. We do not use the word "damage" to describe the recovery upon a promissory note or any other promise, express or implied. The word "damage," when used as descriptive of the recovery to be awarded as the result of damage flowing from an act done in the exercise of the power of eminent domain, plainly means only compensation impliedly promised to be paid for such damage. Section 16 of art. 1 of our constitution uses the word "compensation," not "damage," as descriptive of the recovery the owner of damaged property is entitled to. This suggests that the word "compensation" was used therein advisedly in recognition of the fact that such recovery is not upon the theory of tort obligation, whether it be awarded in a condemnation proceeding or in an action seeking recovery of compensation after the damaging of property for public use. We make these observations not in a spirit of criticism, yet we apprehend that this indiscriminate use of the word "damage" has led both the bar and the courts to forget sometimes the real nature of a claim such as is here involved.

We now proceed to notice the decisions of this court relied upon by counsel for the city to support their contention that the two-year statute of limitation, § 165 above quoted, is controlling in this case. It may be conceded that some of these decisions, read apart from the

facts and exact questions considered therein, do seem
to support this contention. We think, however, it will
appear as we proceed that subd. 3 of § 159, Rem. Code,
above quoted, fixing at three years the limitation for
the commencement of actions upon "a contract or lia-
bility . . . implied," has never been invoked or con-
sidered by this court with reference to a claim such as
is here involved.

In *Sargent v. Tacoma,* 10 Wash. 212, 38 Pac. 1048,
there was involved a cause of action accruing more
than three years prior to the suing thereon. It was an
attempt to recover for injury to property resulting
from a change of street grade. The trial court held the
action to be barred, apparently upon the theory that it
was for trespass and was, therefore, barred by subd. 1,
§ 115, Hill's Code (now subd. 1, § 159, Rem. Code), pre-
scribing three years as the limitation for the commence-
ment of actions for waste or trespass upon real prop-
erty. Affirming the trial court upon appeal, this court
said:

"If actions of this kind are regarded as trespasses
upon real property, the three years' limitation created
by Code Proc. § 115, covered this case; but if they are
not, then Code Proc. § 120, limiting actions for relief
not otherwise provided for to two years, did cover it."

No mention of, and apparently no consideration
whatever was given to, subd. 3 of the same section, here
relied upon by respondents. Nor was any considera-
tion given to the claim other than as a trespass or pure
damage claim arising in tort. We do not regard that
decision as a controlling holding that subd. 3 did not
apply to the facts of that case.

In *Suter v. Wenatchee Water Power Co.,* 35 Wash.
1, 76 Pac. 298, 102 Am. St. 881, we have a case of dam-
age to the plaintiff's property by the overflow of water
from the company's ditch. While the company, we as-

sume, possessed the power of eminent domain, the case
was both prosecuted and defended upon the theory that
the plaintiff's claim was one for damages as the result
of negligence, a tortious wrong, on the part of the com-
pany. More, it was for an act of alleged negligence
which neither party claimed was, or could have been,
the result of the exercise of the power of eminent do-
main. There apparently was no thought of the com-
pany's claiming any rights under its eminent domain
power. Briefly putting aside subd. 3 of the three-year
statute relating to "contracts" as not being applicable
to the case because that section relates to contractual
liabilities only, the court, speaking through Judge Had-
ley, proceeds to learnedly discuss the possible applica-
bility of subd. 1 of the three-year statute relating to
trespass, and reaches the conclusion that the act com-
plained of was not trespass, and therefore that subdi-
vision did not apply to the case. The final result was
that the court held the two-year general statute appli-
cable. Bal. Code, § 4805, now Rem. Code, § 165. We
think that decision is not controlling of the proper dis-
position of this case.

In *Denney v. Everett*, 46 Wash. 342, 89 Pac. 934, 123
Am. St. 934, it seems to have been squarely held that
compensation for damage resulting to private prop-
erty from the city's change of a street grade must be
sought in an action commenced within two years fol-
lowing the change; this, upon the theory that the two-
year general statute, Bal. Code, § 4805, now Rem. Code,
§ 165, applies to such an action. There is but brief dis-
cussion of the law in that decision, the court being con-
tent to rest it upon the decision in *Suter v. Wenatchee
Water Power Co.*, and noticing only as to whether the
three-year trespass statute or the two-year general
statute applies. We think that decision does not fur-
nish an answer to this case.

In *State ex rel. Whitten v. Spokane,* 92 Wash. 667, 159 Pac. 805, we have a case similar to the *Everett* case, in that it involved damages to private property resulting from the change of a street grade by the city. That was an attempt to mandamus the city to institute condemnation proceeding to the end that Whitten, the owner of the property damaged by the change of grade, might have his compensation therefor ascertained by a jury. After holding that he was not entitled to mandamus because he had an adequate remedy at law by an action to recover compensation, it was held that his right of action to recover compensation was barred by the two-year general statute under the holding in the *Everett* case, making no other citation of authority. It now seems to us that these two decisions are largely the result of counsel and the court for the moment losing sight of the real nature of a claim of compensation for damages for the change of a street grade, done in the exercise of a city's power of eminent domain. In the *Everett* case, the theory that the city changed the grade in the exercise of its eminent domain power apparently was not suggested or considered at all; while the *Spokane* decision merely follows the *Everett* decision, evidently without thought on the part of counsel or the court that an action for compensation would be other than an action to recover as for a tort.

Our attention is also called to *Welch v. Seattle & Montana R. Co.,* 56 Wash. 97, 105 Pac. 166, 26 L. R. A. (N. S.) 1047. A critical reading of that case will disclose that it was prosecuted and defended upon the theory of recovering damages for trespass and tort. The only question presented or discussed was whether the three-year trespass statute or the two-year general statute applied.

We now notice three decisions of other courts relied upon by counsel for the city. In *Chicago & E. I. R. Co.*

*v. McAuley,* 121 Ill. 160, 11 N. E. 67, it was held that an action "to recover damages" (so called by the court) resulting to adjoining property from the construction and operation of the company's railroad was barred in five years and accrued when the railroad was constructed and put in operation. The action seems to have been assumed to be one to recover damages as for tort, and was held barred by § 15 of chapter 83 of the statutes of Illinois, a portion of which is quoted by the court in its opinion as follows:

"Actions to recover damages for an injury done to property, real or personal, . . . and all civil actions not otherwise provided for, shall be commenced within five years next after the cause of action accrued."

We find the whole of that section in Hurd's Revised Statutes of Illinois of 1874, reading as follows:

"Actions on *unwritten contracts, expressed or implied,* or on awards of arbitration, or to recover damages for an injury done to property, real or personal, or to recover the possession of personal property or damages for the detention or conversion thereof, and all civil actions not otherwise provided for, shall be commenced within five years next after the cause of action accrued." (p. 675.)

We italicize the words to be noticed particularly. The notes thereunder indicate that the section had been the law since 1849. The damage in question appears to have commenced in 1872, while this section was in force; so, even if counsel and the court had treated the action as one to recover on an implied contract, the holding would have been the same. We think this decision is not out of harmony with our conclusion here reached.

In *Luckey v. City of Brookfield,* 167 Mo. App. 161, 151 S. W. 201, recovery was sought for damages resulting from the construction and commencement of

the use of a sewer by the city eighteen years prior to the commencement of the action. The main question seemed to be, When did the cause of action accrue? It was held to have accrued upon the construction and commencement of the use of the sewer, though the damage resulting from such use was somewhat intermittent during the eighteen years. The opinion does not tell us what the terms of the statute were, but holds that the action was barred at the expiration of ten years from the accrual of the cause of action, and that there arose but one cause of action. The opinion seems to mean that the action was barred in ten years because the city acquired a prescriptive right at that time to so maintain and use its sewer. It might be plausibly argued upon this theory that respondents' cause of action here sued upon would not be barred until the expiration of the time when the city would acquire by prescription the right to damage respondents' property in the manner it is doing, which seemingly would be ten years. We need not pursue this interesting inquiry in this case, since the three-year implied contract limitation statute saves respondents' claim in any event. Our recent decision in *Aylmore v. Seattle, ante* p. 515, 171 Pac. 659, and the decision in *Smith v. Sedalia,* 152 Mo. 283, 53 S. W. 907, 48 L. R. A. 711, are of interest in this connection.

In *Atchison, T. & S. F. R. Co. v. Lauterback,* 8 Kan. App. 15, 54 Pac. 11, recovery was sought for damages resulting from the construction of the company's railroad six years prior to the commencement of the action. The right of action was held barred under § 12, ch. 95, General Statutes of that state of 1897. No part of the statute is quoted, nor is its substance stated in the opinion; but turning to that section in the compilation of the statutes referred to, we find that "an action upon a contract not in writing, express or implied,"

must be commenced within three years. This, it seems probable to us, was the statute the court had in mind, though the last subdivision of the section relating to "relief not hereinbefore provided for" would also seem to bar the right of action. We note that that action seems to have been viewed as one seeking compensation for damages resulting from the exercise of the company's power of eminent domain, rather than one of recovery as for tort. We see nothing in this decision inconsistent with our conclusion here reached.

It is contended in the city's behalf that the trial court erred in its rulings upon the admission of evidence and in its instructions to the jury, in that it did not rule that respondents' right to compensation for damages, if any they had, accrued, and the statute of limitation began to run against such right, at the time of the construction of the incinerator, which, as we have noticed, was more than three years prior to the commencement of this action. We think it is clear that the trial court could not have so ruled as a matter of law; first, because the court could not determine, as a matter of judicial knowledge, that the mere construction of the incinerator building and plant would cause damage to respondents' property, nor could it judicially know that the then prospective operation of the incinerator would damage respondents' property; and second, because the evidence all but conclusively shows that respondents' property was not damaged by the construction of the incinerator nor by the operation thereof until May, 1912, two and one-half years prior to the commencement of this action, as found by the jury. It is argued that our decision upon the former appeal in effect holds that the damage must, as a matter of law, be deemed to have commenced, if at all, upon the construction of the incinerator. We do not so read it. That decision may mean that it might be

found from evidence, as a matter of fact, that the damage, if any, commenced at the time of the construction of the incinerator and its then prospective operation. But surely it was not intended as holding that the court would take judicial notice that the construction and operation of an incinerator is necessarily such that the nature and extent of the damage, if any, which might thereby be inflicted upon adjoining property could be foretold at the time of the completion of the plant and before it is put into operation. There may be some decisions relating to the construction and operation of railroads lending some support to counsel's contention, but even those we think will be found to regard the commencement of the operation of the railroad as the commencement of damage to property not actually taken, and that to be the time of the commencement of the running of the statute of limitation against recovery of compensation for such damage. Such a view may find justification in the fact that the manner of operation of railroads and the effect thereof upon adjoining property is largely a matter of common knowledge. But if that be so as to railroad operation, it is not so as to incinerators. The operation of an incinerator might or might not necessarily cast offensive fumes, odors, smoke, ashes, etc. upon and over adjoining property. What the effect of the operation of a particular incinerator in this respect is or becomes is a matter of proof. We conclude that the trial court correctly ruled upon the admission of evidence and in the giving of its instructions here complained of.

Some contention is made against the allowance of costs and disbursements to respondents incurred by them upon the first trial. It seems that, at the time the court sustained the city's demurrer to respondents' complaint and dismissed the case, it had proceeded to the stage that a jury had been empaneled and

the case was proceeding to trial on the merits, respondents having then summoned witnesses for the trial. Respondents were in effect wholly successful upon the first appeal and upon the trial resulting in the judgment here appealed from. Clearly they are now entitled to costs and disbursements incurred upon the first trial, though that proved abortive, but not from any fault of theirs. Rem. Code, § 476. It is true that this court held that respondents' second cause of action did not state facts entitling them to relief, and to that extent may be said to have approved the trial court's ruling, but that cause of action was in substance the same as the first cause of action pleaded, except that it was grounded upon negligence on the part of the city instead of upon the theory of recovering compensation for damages resulting from the city exercising its power of eminent domain. Had the trial court merely sustained the city's demurrer to the second cause of action and allowed the case to proceed to trial upon the first cause of action, there would not have been these witness fees for two trials.

The judgment is affirmed.

ELLIS, C. J., FULLERTON, and WEBSTER, JJ., concur.