WOOD, Appellant, vs. CHAMBER OF COMMERCE OF THE CITY OF MILWAUKEE, Respondent.

*October 1—October 20, 1903.*

*Corporations: Chamber of commerce: Disciplining members: Trial for offenses: Sufficiency of charges: By-laws construed: Accusers as judges: Equity: Injunction.*

1. Where the by-laws of a corporation give the board of directors power to try any member of the corporation upon charges made in a prescribed manner, and to censure, suspend, or expel him if he be found guilty, a court of equity will not interfere to prevent the exercise of such jurisdiction, upon the mere assumption that the board, if permitted to exercise it, will commit jurisdictional error or will deny to the accused a fair trial. *Bartlett v. L. Bartlett & Son Co.* 116 Wis. 450, distinguished.

2. The sufficiency of the charges in such a case is a matter to be determined in the first instance by the trial board.

3. Mere indefiniteness in the charges is not a ground for the interference of a court of equity, since the trial board itself has ample power to enforce the right of the accused to have them made specific, and will presumably do so.

4. By-laws of a chamber of commerce organized "to promote just and equitable principles in trade," giving its board of directors power to censure, suspend, or expel any member found guilty of certain offenses, described in language not limited as to place or as to the other persons concerned therein, are *held* to cover and apply to conduct of the nature specified on the part of members in their dealings with nonmembers and outside of the local jurisdiction of the corporation.

5. By-laws of a corporation making it the duty of the board of directors to examine all charges against any member of the corporation made in the prescribed manner by any other member or members, do not preclude members of the board from making such charges or from taking part in the trial of a member upon charges made by themselves.

APPEAL from an order of the circuit court for Milwaukee county: WARREN D. TARRANT, Circuit Judge. *Affirmed.*

The appeal is from an order dissolving a temporary injunction. The action of the court was based upon the pleadings and supporting affidavits. The substance of the complaint is as follows: The defendant is a corporation duly organized under the laws of Wisconsin. It possesses power to make and enforce by-laws not inconsistent with its charter or the law of the land. Its governing board consists of nine directors. Such board possesses power to investigate complaints against members for violations of its rules and by-laws and to discipline such members, if found guilty, in the manner prescribed in such by-laws. The declared objects of the corporation are:

"To promote just and equitable principles in trade, to correct abuses, to establish and maintain uniformity in the commercial usages of the city, to acquire, preserve and disseminate valuable business information, and to support such regulations and measures as may advance the mercantile and manufacturing interests of the city of Milwaukee."

Among the by-laws of the corporation are the following:

Rule 4, sec. 10: "It shall be the duty of the board of directors to examine charges against any member of the association, when made in writing to the president or secretary, by any other member or members, and if the party accused shall be found guilty of improper conduct of a personal character in the rooms of the association; of a violation of the rules, by-laws or regulations of the association; of making or reporting any false or fictitious purchases or sales; of any act of bad faith; of any attempt at extortion; of any act contrary to the spirit which should govern all commercial transactions; or of any other dishonorable or dishonest conduct, he

shall be censured, suspended, or expelled by the board of directors, as it may determine from the nature and gravity of the offense committed. It shall be deemed an offense against the rules of the *Chamber of Commerce* for any person to act as a broker or commission merchant, or to buy or sell any grain or other property for an agent or employee of any telegraph company doing business in the city of Milwaukee, and upon complaint, in writing, of a member of the *Chamber of Commerce* or any officer or agent of any telegraph company, charging such offense against any member of this association, the board of directors shall investigate such complaint; and if the member accused shall be found guilty, he shall be censured, suspended, or expelled, as the directors may determine, in the manner prescribed in this section."

Rule 4, sec. 13: "All charges, excepting as to violations under sec. 9 of rule XI, made to the board of directors against any member of the association for any default, misconduct or offense, shall be in writing, and shall state the default, misconduct or offense charged, and the same shall be signed by one or more members of the association or by a business firm, one or more of whose members shall be members of the association."

Rule 4, sec. 14: "No member shall be censured, suspended, or expelled under this rule without an examination of the charges against him by the board of directors, nor without having an opportunity of being heard in his own defense. No examination shall take place until the member accused shall have had six days' prior notice of examination served on him, or fifteen days' prior notice mailed to him in case he has no place of business or residence in the city of Milwaukee. All such notices must be accompanied by a copy of the charges against him, in writing. Such notice may be served upon the accused personally by the secretary, or any assistant, or it may be left at the ordinary place of business or residence of the accused; or it may be mailed as above, in either of which cases the notice shall be considered sufficient, and the examination may proceed, whether the accused be present or not."

Rule 4, sec. 27: "Any member of the *Chamber of Commerce* who shall be interested or associated in business with, or who shall act as the representative of, or who shall knowingly ex-

ecute any order or orders for the account of any organization, firm, or individual engaged in the business of dealing in differences on the fluctuations in the market price of any commodity without a *bona fide* purchase and sale of property, with intent for an actual delivery, shall be deemed guilty of unmercantile conduct, which renders him unworthy to be a member of the association; and upon complaint to and conviction thereof by the board of directors, he shall be expelled from membership in the association."

Rule 12, sec. 1: "The president of the *Chamber of Commerce* shall at the first meeting of the board of directors after the annual election in each year, or as soon thereafter as practicable, appoint a committee of five to serve for one year, or until their successors shall have been appointed and qualified, to be known as the Committee on Membership, whose duty it shall be to examine all applications for membership; and any male person of legal age wishing to become a member of this association shall present an application in writing, signed by a member, either through the secretary or the chairman of the committee on membership, and a majority of said committee being satisfied that said applicant should be admitted as a member, the name of said applicant shall be placed on the bulletin board of the exchange room, at least ten days prior to any meeting of the board of directors. During the time that the name of such applicant is thus posted, any member in good standing may file with the secretary in writing, signed by such member, objection to the admission of such applicant as a member, and if seven or more members object to the election of such applicant, he shall be ineligible for election; but if no member, or less than seven members object to his election, the secretary shall report the name of such applicant to the board of directors. The board of directors shall vote by ballot upon the election of every applicant thus proposed for membership, and if there be seven ballots in his favor and not more than two ballots appear against him, he shall be declared elected, and upon signing an agreement to be governed by the charter, rules, and by-laws of the *Chamber of Commerce,* and paying an initiation fee of five thousand dollars, together with the annual or other assessment then due, or on presentation of a certificate of unimpaired or unforfeited membership,

duly transferred, and paying the transfer fee of five dollars, he shall become a member of the *Chamber of Commerce.*

"Members hereafter (after May 4, 1899) admitted will not be entitled to participate in the Gratuity Fund unless qualified under the requirements prescribed in the rules relating thereto."

Rule 12, sec. 2: "Before any membership can be transferred under the provisions of this rule, notice of, or application for, such transfer shall have been posted upon the bulletin of the exchange room for at least ten days; when, if no objection shall have been made on account of any unsettled contracts, claims, demands, or complaints against the holder of such membership, it shall thereupon be assumed that the membership is unimpaired; and after transfer of membership no subsequent complaint, claim, or demand against the former holder shall impair such membership so transferred and in the hands of an innocent party. But such transfer of membership shall not entitle the member to whom the same shall be transferred to participate in the Gratuity Fund, unless qualified under the requirements of the rules relating to said fund. The notice or application for transfer shall state the name of the person to whom it is proposed to be made. Objections to the transfer must be in writing, signed by the party objecting, and filed with the secretary, and the party objecting shall also, on the day of filing the same, serve a copy of his objections upon the applicant for transfer. The board of directors shall, upon hearing the parties, determine the sufficiency of such objections. In case any membership shall be transferred in violation of any of the foregoing provisions, such transfer shall be null and void."

Rule 12, sec. 7: "Every member shall be entitled to receive a certificate of membership, bearing the signature of the president and secretary, and the seal of the corporation, which certificate, if the membership it represents be not impaired or forfeited under the rules and by-laws of the association, and if the member holding it have no unadjusted or unsettled claims or contracts outstanding against him, held by members of the *Chamber of Commerce,* shall be transferable upon the books of the association to any person duly elected a member, upon the payment of five dollars, and any unpaid

assessment due thereon.   The certificate of membership of a
deceased member shall be transferable in like manner by his
legal representative."

For many years certificates of membership in the corpora-
tion have been freely bought and sold and transferred by as-
signment, and the formalities indicated in the quoted rules
have not been regarded as material, nor has any attempt
been made to enforce the same except in the event of the
holder of an assigned certificate applying to be elected a
member of the corporation.   The uniform custom has been
to regard the transfer of a member's certificate as terminating
his connection with the corporation.   In May, 1902, plaintiff
purchased in the regular course of business and took an as-
signment of a membership in the association, paying $970
therefor.   Such proceedings were thereafter duly had that he
was elected a member of the association and a certificate, in
due form, was issued to him in place of his assigned certifi-
cate.   Since that time plaintiff has paid all his dues to the
corporation and obeyed all its by-laws.   He is a member of
the firm of Edwards, Wood & Co., a firm composed of Robert
H. Edwards, Forest B. Wood, and himself.   The firm has
always been engaged exclusively in the business of commission
brokers, dealing for their customers in stocks, bonds, grain,
produce, and provisions for future delivery, and in cash
grain, and plaintiff has been exclusively engaged in transact-
ing its business.   August 16, 1902, plaintiff sold and assigned
his certificate of membership in the usual way, to E. L.
Brown, then a member of the association, and a member of
the firm of I. G. Andrews & Co.   August 20, 1902, Brown
deposited said certificate with the defendant, together with
the required fee for the issuance of a new certificate, and re-
quested such transfer as provided in sec. 7, rule 12, and at
the same time requested defendant to take the necessary steps
to that end, required by sec. 2 of rule 12.   The association
has unjustly refused to honor such request.   I. G. Andrews,

at the time plaintiff assigned his certificate as aforesaid, was and still is a member of the association. At such time there was not, nor is there now, any unsettled claims of any kind against plaintiff or Edwards, Wood & Co., or any member thereof, in favor of defendant or any member thereof, nor has any complaint been lodged against plaintiff under sec. 2 of rule 12 aforesaid, or otherwise. September 4, 1902, E. J. Furlong, Harry Berger, and Walter Stern, assuming to act as members of a committee on market reports, filed with the board of directors of the association a paper falsely charging plaintiff, or the firm of Edwards, Wood & Co., with making or reporting false or fictitious purchases or sales in violation of sec. 10, rule 4, and of having been guilty, on or about July 9, 1902, of dealing in differences on the fluctuations in the market price of a commodity without a *bona fide* purchase or sale for actual delivery, in violation of said sec. 27 of rule 4. September 6, 1902, plaintiff received a copy of such paper, with a notice that a hearing on such charges would be had by the board of directors of the association September 25, 1902, at 3 o'clock p. m. Such paper contained the following:

"*To the Board of Directors of the Chamber of Commerce of the City of Milwaukee*—

"*Gentlemen:* The undersigned hereby complains of *Lewin A. Wood,* a member of the *Chamber of Commerce of the City of Milwaukee,* and makes the following charges against him:

"First: That the said *Lewin A. Wood,* or the firm of Edwards, Wood & Co., of which he is a member, was on, about, or prior to July 9, 1902, guilty of making or reporting false or fictitious purchases or sales in violation of sec. 10 of Rule IV of the rules of the *Chamber of Commerce of the City of Milwaukee.*

"Second: That the said *Lewin A. Wood,* or the firm of Edwards, Wood & Co., of which he is a member, was on, about, or prior to July 9, 1902, guilty of dealing in differences on the fluctuations in the market price of a commodity without a *bona fide* purchase or sale for an actual delivery, in violation of sec. 27 of Rule IV."

Since the plaintiff assigned his certificate of membership
he has, according to custom, regarded his connection with the
association as terminated.   He challenges the jurisdiction
of the board to try him on charges for violating the by-laws of
the corporation after assigning his certificate of membership
and parting with the ownership thereof.   The board of di-
rectors of the association are prejudiced against plaintiff,
have prejudged the matters upon which they propose to sit
as judges, and are incapable of giving plaintiff an impartial
trial in respect thereto.   Plaintiff and his firm are extensive
dealers throughout a large territory.   Their reputations as
business men are a valuable asset.   The threatened trial, if
allowed to take place, regardless of the result thereof, will in-
jure the good name of plaintiff and his firm irreparably.
When plaintiff assigned his certificate he intended to wholly
retire from the association, as its officers well knew.   The
committee, styling itself a "Committee on Market Reports,"
that filed the charges, is not recognized by, and is wholly un-
known to, the corporation charter and its rules and by-laws.
All of the acts of the officers of the association and its commit-
tee on market reports embarrassing the efforts of plaintiff and
his assignee to have the certificate of membership transferred
upon the books of the corporation to such assignee, are parts
of a scheme to forfeit plaintiff's certificate of membership
to the corporation.   The directors of defendant, unless re-
strained by the court, will, on September 25, 1902, at 3 o'clock
p. m., in form try and condemn and sentence plaintiff, and
forfeit his certificate, thereby causing him irreparable dam-
age.

The decision prayed for is to this effect: First, that the
sale and assignment of plaintiff's certificate to E. L. Brown
terminated plaintiff's membership in the association; second,
that such membership is unimpaired and that plaintiff is en-
titled to have the same transferred to E. L. Brown or to such
other member of said defendant as said Brown or the firm of

I. G. Andrews & Co. may direct; third, that defendant and its officers and board of directors have no jurisdiction to try plaintiff upon the charges filed; fourth, that plaintiff is entitled to have defendant and its officers, and each and all of them, enjoined from attempting to exercise any jurisdiction over plaintiff in respect to the charges filed against him, and to a temporary injunction in respect to such matters pending the litigation.

The answer, so far as concerns the question here raised,— in addition to numerous admissions covering the allegations of the complaint as to the membership of plaintiff in the defendant corporation, the by-laws of the corporation, the assignment by plaintiff of his certificate, the conduct of the association in respect thereto, the filing of charges against plaintiff, and his impending trial thereon, and denials on information and belief,—was this in substance: The by-laws of the corporation, in addition to those mentioned in the complaint, that are material to this litigation, include these:

Rule 4, sec. 1: "All the financial and business concerns of the association shall be managed and conducted (in accordance with the charter and rules of the association) by and under the direction of the board of directors; and no moneys shall be paid except on its vote on each sum proposed to be paid. It shall be the duty of the board of directors to inquire into matters affecting the welfare of the association, or the business interests of the city of Milwaukee, and to report upon the same to the association, together with such recommendations as to rules and regulations, rates of commission and charges, as may be deemed advisable. The board of directors shall, annually, on the second Monday in April of each year, or as soon thereafter as may be practicable, appoint three standing committees, of five members each, to act respectively as supervisors of flour inspection, of grain inspection and weighing, and of inspection of provisions and cooperage, and such other committees, inspectors, gaugers, weighers, measurers, and other officers or servants, not otherwise provided for, as in its opinion may be for the best interests of the association."

Rule 4, sec. 11: "It shall be the duty of the board of directors, in case any grave offense, committed by any member of the association against the good name or dignity thereof, shall come to its knowledge, either by public rumor or report, to cause a preliminary or informal investigation to be made by a committee of its members into the truth or falsity of such rumor or report. If such committee, after investigation, shall deem such rumor or report sufficiently well founded, it shall so report to the board of directors, with charges, whereupon the person thus implicated shall be notified in the manner provided in section fourteen (14) of this rule, to appear before the board of directors, and, if found guilty, he shall be censured, suspended, or expelled. A majority of a quorum sitting at a regular, special, or adjourned meeting of the board of directors, shall be sufficient to censure, but to suspend or expel a member of the association for any offense enumerated in this or the foregoing section, it shall require an affirmative vote of two thirds of the members present, in which case it shall require at least six affirmative votes to suspend or expel."

The corporation customarily had a standing committee, appointed each year, known as the "Committee of the Board of Directors on Market Reports." For the year commencing the second Monday of April, 1902, the persons who signed the charges filed against plaintiff were members of such committee. In their capacity as members of the corporation and of such committee they filed the charges against plaintiff mentioned in the complaint, in the regular way. The alleged proceedings taken by the corporation and its officers in respect thereto were regular in all respects, being in conformity with the by-laws of the corporation, and for the purpose of giving plaintiff a fair and impartial hearing. About August 26, 1902, a notice was duly posted that application had been made for transfer of plaintiff's membership in the association to Warren E. Stacks. Within the time allowed by the rules of the association therefor objection was duly made to such transfer, pending the investigation of the charges against plaintiff theretofore filed. Upon such objection being made

the application was withdrawn and no application was thereafter made for a transfer of such membership. The effect of the pending charges against plaintiff and the objection to the transfer of his membership was to impair such membership and render it nontransferable.

Allegations of the answer on material points were corroborated by affidavits. Some supporting affidavits were also presented on behalf of plaintiff.

Upon the verified complaint a temporary injunctional order was obtained. Upon the pleadings and supporting affidavits such order was set aside, and plaintiff appealed.

For the appellant there was a brief by *James W. Bass,* attorney, and *Durment & Moore,* of counsel, and oral argument by *E. S. Durment.* They contended, *inter alia,* that the alleged conduct upon which the charges are based was not in the rooms of the exchange, nor in any way connected with the defendant, and plaintiff is not amenable to the defendant therefor. The rules and by-laws do not purport to apply to such conduct, and if they do they are void. *Flint v. Pierce,* 99 Mass. 68; *Ireland v. Globe M. Co.* 21 R. I. 9; 3 Clark & M., Priv. Corp. § 638*b,* p. 1941; *State ex rel. Graham v. Chamber of Commerce,* 20 Wis. 63; *Comm. v. St. Patrick Ben. Soc.* 2 Binn. 441; *People ex rel. Gray v. Medical Soc.* 24 Barb. 570; *Cartan v. Father Mathew U. B. Soc.* 3 Daly, 20; *Kolff v. St. Paul F. Exch.* 48 Minn. 215. It is in contravention of the law of the land that the prosecutor shall also act as judge. *Murdock v. Phillips Academy,* 12 Pick. 263–265; *People ex rel. Meads v. Alpha Lodge,* 13 Misc. (N. Y.) 687.

For the respondent there was a brief by *Miller, Noyes & Miller,* and oral argument by *G. H. Noyes.* They argued, among other things, that the complaint states no cause of action in equity. To make out a case for an injunction it must appear that there is at least a reasonable probability, not merely a bare possibility, that a real injury will occur if the

writ is not granted. *Sage v. Fifield,* 68 Wis. 546; *Home Ins. Co. v. Nobles,* 63 Fed. 642; *Truly v. Wanzer,* 5 How. 141; *Lorenz v. Waldron,* 96 Cal. 243; 16 Am. & Eng. Ency. of Law (2d ed.) 361. One court cannot entertain jurisdiction of an action upon the ground that another court of competent jurisdiction will decide wrongly or improperly. *Wolfe v. Burke,* 56 N. Y. 115; *West v. Mayor,* 10 Paige, 539. Acting within its jurisdiction, the board of directors has over its members the judicial authority of a court. *Dickenson v. Chamber of Commerce,* 29 Wis. 45; *State ex rel. Cuppel v. Milwaukee Chamber of Commerce,* 47 Wis. 670; *Belton v. Hatch,* 109 N. Y. 593; *Bartlett v. L. Bartlett & Son Co.* 116 Wis. 450, 93 N. W. 473. The same presumption of fairness and impartiality must therefore be indulged in its favor as in favor of a court. No case is cited and we have found none where a court has asserted its equitable powers to enjoin an impartial hearing before another tribunal under the rules of such an association. It is settled doctrine that a suit in equity for such purpose is not maintainable. *Thomas v. Musical M. P. Union,* 121 N. Y. 45–57; *Hurst v. N. Y. Prod. Exch.* 100 N. Y. 605, 1 Cent. Rep. 260; *Gregg v. Mass. Med. Soc.* 111 Mass. 194. The board had jurisdiction, although the transactions complained of do not appear to be with members and in the chamber. *Dickenson v. Chamber of Commerce,* 29 Wis. 45; *People ex rel. Thacher v. N. Y. Comm. Asso.* 18 Abb. Pr. 271–279; *Haebler v. N. Y. Prod. Exch.* 149 N. Y. 414, 44 N. E. 87. Members of the association, although members also of the board of directors, may make charges. *Green v. Board of Trade,* 174 Ill. 585, 51 N. E. 599.

Marshall, J. This appeal must turn on whether the complaint states a cause of action. That depends on whether the board of directors of the defendant had jurisdiction under the laws of the corporation to consider the charges filed against appellant. At the outset such jurisdiction was chal-

lenged because plaintiff assigned his certificate. It is now conceded that such circumstance did not sever appellant's connection with the corporation nor militate against the power of its board to try him upon charges filed. The material grounds now insisted upon to support the claim of want of jurisdiction will be considered in detail.

1. Do the facts alleged against appellant constitute an offense against the laws of the corporation? It is a sufficient answer to that to say that a court of equity never exercises its jurisdiction to prevent another court or tribunal from exercising its jurisdiction upon the theory that if permitted to do so it will commit jurisdictional error. That is what the action before us seems to have been aimed at. At the outset of the trial of appellant before the board it must necessarily accord to him a hearing on the question of the sufficiency of the charges filed. By his membership in the corporation he is bound by contract, so to speak, to submit that question to the proper corporate tribunal, the same as he is the question of his guilt or innocence. The situation of appellant is unlike that of the plaintiff in *Bartlett v. L. Bartlett & Son Co.* 116 Wis. 450, 93 N. W. 473. There the tribunal of the corporation exercised its jurisdiction to decide upon the matter in hand, but exceeded it by reason of violating the rules of the corporation. If the action had been brought to prevent the trial board from making a decision, upon the ground that if suffered to do so it would go beyond its jurisdiction, manifestly the action could not have been maintained.

2. Are the charges sufficiently specific to comply with the rules of the corporation? That is effectually met by the familiar rule that mere indefiniteness is not a jurisdictional defect. If appellant deems the charges indefinite his remedy is an appeal to the trial board to have them made specific. The board has ample jurisdiction to hear all complaints of that kind, and a court of equity cannot, in advance of its acting at all, assume that when called upon to do so it will either

refuse to perform its duty or commit jurisdictional error otherwise. No doubt, as said in *Hutchinson v. Lawrence,* 67 How. Pr. 38, to which our attention has been called, in every proceeding to discipline a member of a corporation for violating its laws he is entitled to be informed of the charges with sufficient definiteness to enable him to know the precise nature thereof; but the primary tribunal to enforce that right is the one provided by the corporation. Hence, a suit to enjoin it from acting while it has jurisdiction over the subject matter must be regarded as one to interfere with the exercise of jurisdiction rather than one to avoid the injurious results of jurisdictional error.

3. The point is further made that the conduct called in question did not concern the corporation or any of its members, hence it is not covered by the by-laws; that the corporation has no jurisdiction to try appellant for what he may have done outside of its jurisdiction or with a stranger. The language of the by-laws is general. In its literal sense it covers conduct on the part of members of the corporation regardless of place or of the person concerned therein. That is in strict harmony with the declared purpose of the corporation, to promote just and equitable principles in trade—not merely between the members of the corporation or in its chamber, but generally. Consistent with that, the by-laws were made to require the members of the corporation to observe a proper standard of conduct generally. In no other way could the corporation efficiently "promote just and equitable principles in trade." To allow a person to enjoy its benefits as a member so long as his conduct with its members shall be above reproach, regardless of his conduct with strangers, would tend to promote a low rather than a high standard of business morals. Rules of the character of those under consideration have been commonly held to cover conduct of members of the corporate body outside its local jurisdiction. *People ex rel. Thacher v. New York Comm. Asso.* 18 Abb. Pr. 271, cited

by respondent's counsel, is directly in point, and covers the entire field of controversy on this part of appellant's argument. The object of the corporation there, as here, was to "inculcate just and equitable principles of trade." A member was expelled for violating a by-law which was framed in general language. A writ of *mandamus* was sued out to obtain a reinstatement of the member, the claim being made that the by-law did not cover his case, as the offense charged, if committed, occurred outside the local jurisdiction of the corporation and with a stranger; that to construe the by-law as reaching such a case would call for its condemnation for unreasonableness. The court held that the purpose of the corporation and its by-laws clearly concerned the conduct of its members with strangers as well as with each other; that to hold that the corporation could promote a high standard of business morals by controlling the conduct of its members with themselves and leaving them free to violate its standard of trade ethics in their dealings with strangers would be absurd. The language of the opinion received the approval of the court of appeals in *Haebler v. New York P. Exch.* 149 N. Y. 414, 44 N. E. 87, and so fully meets the argument of appellant's counsel here at this point, that we may well give it a place in this opinion:

"If it [the by-law] was obligatory upon him it was binding at all times. He had no right to make a distinction between dealing with members and strangers. He had no right to say: I will inculcate these doctrines while at the association, but I claim the privilege outside of it to be as dishonest as I choose. I will be straightforward and honest in my dealings with one class of persons; but with others I will violate the principles of integrity to which I have subscribed. If such a course of conduct could be tolerated and allowed, then so far as this great object is concerned, the association would be of no account, of no sort of importance. It would only be a shield to cover up dishonesty and fraud outside of its meetings and when its members were engaged in dealing with strangers. Its professions of morality could amount to nothing,.

and be but an empty name without any substance.  In fact, while its ostensible object would be elevated and honorable, it would be but a cloak for those who sought to avail themselves of its privileges to be guilty of evil practices and improper behavior."

4. The further point is made that the board of triers have no jurisdiction to entertain the charges because they were preferred by a member of the board.  As suggested by respondent's counsel, that is answered effectually by the fact that the by-laws require the board to examine all charges against any member, reduced to writing and filed by any other member or members with the president or secretary.  There is no exception.  The members of the board of directors are not precluded by any by-law from filing charges against a brother member, or exempted for any cause from performing their duty as directors to examine into filed charges.  That condition of things appellant assented to in joining the corporation, the same as he assented to any other feature of the jurisdiction of the board as laid down in its by-laws.  Moreover, as an independent proposition, a board exercising mere quasi-judicial powers is not necessarily ousted of its jurisdiction in respect to any particular subject within that jurisdiction because the proceedings before it in that particular matter were instituted by one of its members.  This court decided that in *State ex rel. Starkweather v. Superior,* 90 Wis. 612, 64 N. W. 304.  There one of the members of the common council filed charges against the mayor, and he and others interested in the result subsequently participated as members of the council in trying him upon such charges.  The claim was made, upon common-law writ of *certiorari,* that the participation of such interested members of the council in the trial was fatal to the judgment rendered.  This court held otherwise, because the charter made it the duty of the persons whose conduct was assailed to act as members of the trial body, and made no provision for their exemption upon

the ground of prejudice or other cause; that as the legislature created the office of mayor it had a right to provide any method it might see fit for the removal of an incumbent of the office for cause; that, under the charter, interest of one or more members of the trial body in the result did not go to the jurisdiction of such body. The court did not intend, later, to overrule that in *State ex rel. Getchel v. Bradish,* 95 Wis. 205, 70 N. W. 172.

We can see no good ground for holding that the complaint shows that the board of directors of respondent has committed jurisdictional error. The cause seems to be wholly grounded upon the idea that if the board is permitted to exercise its jurisdiction appellant will not have a fair hearing. If that were sufficient to warrant a court of equity in controlling the duly constituted tribunals of corporations and preventing them from exercising their jurisdiction, an easy way would exist for removing the trial of offenses against the by-laws of corporations from the jurisdiction of their tribunals to the courts. No such judicial authority exists. The methods provided by the laws of a corporation for disciplining its members, unless void for unreasonableness or violative of some law of the corporation itself, or of the land, are supreme. If the corporation violates its laws in the trial of one of its members, thereby committing jurisdictional error to the injury of the property rights of a member, equity will furnish him a remedy if he has none other.

*By the Court.*—The order is affirmed.