Edward M. Thompson v. City of Winona.

[51 South. 129.]

1. MUNICIPALITIES. *Sewers. Injury to property. Liability of city where system owned by another.*

'A municipality which compels connections with a sewerage system laid in its streets, is liable to the owner of a farm upon which the system empties into a creek, insufficient in volume to carry off the sewage, for resulting damages to his land, although the system be owned and operated by another.

2. CIRCUIT COURTS. *Pleading and practice.*

That another is jointly liable with the defendant for the tort or breach of duty sued for, does not warrant the sustaining of a demurrer to the declaration.

3. CONSTITUTIONAL LAW. *Constitution 1890, sec. 17. Eminent domain.*

Under Const. 1890, sec. 17, prohibiting the damaging of property for public use without compensation, an action will lie against a municipality for injuries resulting from the discharge of sewage into a stream flowing through plaintiff's land.

FROM the circuit court of Montgomery county.

HON. JAMES STONE, Special Judge.

Thompson, appellant, was plaintiff in the court below; the city of Winona, a municipality operating under the Code of 1906, chapter entitled "Municipalities," appellee, was defendant there. From a judgment sustaining the demurrer of the city to the declaration and dismissing the suit the plaintiff appealed to the supreme court.

The declaration charges that the plaintiff, Thompson, is the owner of designated real estate situated on Hay's Creek without the corporate limits of the city of Winona; that the Winona Water, Sewerage, Ice & Light Company, under contract with the city of Winona has laid and is operating a sewerage system through the streets of the city, the same emptying into a creek

beyond the municipal limits; that the current of the creek is not sufficient to carry off the sewage matter, especially during dry weather; that the city had, by ordinance, compelled its residents under penalty to connect their premises with such sewerage system; and that as a result the lands of plaintiff, situated on the creek, had been greatly depreciated in value and plaintiff had been injured by disagreeable odors and the pollution of the water of the creek resulting from the emptying of the sewage into it; that parts of his land formerly used for pasturage purposes, and other parts thereof formerly used for cultivation, had been rendered unfit for such uses because of the close proximity thereto of the mouth of the sewer. The declaration prayed judgment for damages in the sum of $1,380.

The city demurred to the declaration on the ground that it did not own the sewerage system, and received nothing in the way of fees or other compensation for its use and operation, as shown by the contract set forth in the declaration.

*Coleman & McClurg* for appellant.

Power conferred upon a municipality to establish a drainage system does not authorize it to establish a system which constitutes a nuisance and the fact that a municipality is authorized to condemn land for public purposes, confers no power on it, the right of condemnation not having been exercised, to flood the land of a private citizen for the purpose of creating a nuisance. In the instant case the city, as shown by the maps, charts, and surveys, directed the building of the main sewer through the city limits and one fourth of a mile beyond into the creek without condemnation of the outside lands, or compensation paid to appellant for thus imposing upon him. If the right to construct and maintain a sewerage system is conferred upon a city by its charter, or by statute law, the authority must be exercised in conformity with private rights and the system can not be so constructed as to render it a nui-

sance.   Joyce on Nuisances (1906) §§ 80, 282, 285, 289, 354, 356.

We insist that, in view of the situation of the city on the slope of the hills, and because of the sluggish waters of the creek, no reasonable man could possibly deny that a nuisance had been inflicted on appellant.   These facts taken together with the affirmative city ordinances for construction on the lines of its survey and in ratification and approval of what had been done by its joint action with the sewerage company, render the city liable for its obvious wrongs in both instances.

While our contention is not based upon the doctrine of *respondeat superior* alone, such doctrine is applicable here.   The main strength of our case lies in the concurrent joint action of the city and the sewerage company in committing a civil wrong, or tort.   The sewerage company was the agent of the city, and therefore the superadded duty was imposed upon the city to carefully instruct its agent, and to see that its work was properly done, especially with reference to the rights of others.   Clark & Skyles on Agency, 1133.

*Hill, Knox & Wilburn,* for appellees.

It seems to be contended by opposing counsel that after the building and construction of the sewerage system by the sewerage company, the city ratified and approved the same by passing an ordinance requiring the inhabitants to make connections with the sewer and to pay tolls assessed therefor, or, in default thereof to be punished as for a misdemeanor by the city authorities, and that many of the inhabitants did comply with the ordinance.   Now, as to such alleged ordinance, we contend that the same was purely an attempted legislative enactment on the part of the city; and that the city is not liable for any of its legislative enactments; and furthermore, the declaration does not show that the city ever enforced or attempted to enforce such ordinance.   While many of the citi-

zens have complied with the ordinance, their doing so could not in any event make the city liable; and we contend that the ordinance, so passed by the city, was illegal and could not have been enforced as against any citizen, and consequently no citizen was legally bound to obey the same; and if any citizen did obey the same and aid the sewerage company in committing a nuisance by emptying its sewer into the creek, the action of the connecting citizens could not, in any way, bind the city nor make it liable for any nuisance, which the sewerage company may have committed. An ordinance requiring any one to commit a nuisance is void and of no effect whatever.

The sewerage company, in the construction and building of the water works and sewerage system, did not act on behalf of the city, nor as the agent or servant of the city. If the company bore any relation whatever to the city in the matter, it was in the nature of an independent contract; the company having been simply granted a franchise to build and construct a sewerage system within the corporate limits of the city, for the benefit of the company alone. The city is, therefore, in no way responsible or liable for any nuisance that the sewerage company may have committed.

A municipal corporation is not liable in an action of damages, either for the non-payment of, or for the manner in which, in good faith, it exercises discretionary powers of a public or legislative character.    2 Dillon on Municipal Corp. § 753.

In *Kuhn v. City of Milwaukee,* 92 Wis. 263, 65 N. W. 1030, the court, in holding the city not liable for dumping its garbage into Lake Michigan to the injury of fishing nets, upon the ground that the work was done by an independent contractor, said that even though the work had been done by the city through its servants and employes the result would be the same, as the municipality was engaged in a public or governmental service.

In *Condict v. Jersey City,* 46 N. J. L. 157, the municipality

was held not liable for an injury occasioned by the negligence of a driver employed by the board of public works to remove ashes and refuse from boxes and barrels placed upon the sidewalk by the inhabitants.

In *Love v. City of Atlanta,* 95 Ga. 129, 51 Am. St. Rep. 64, the defendant was relieved from liability for injuries occasioned by the running away of the mule attached to a garbage cart belonging to the city. The mule causing the damage was in use by the city under the direction of the health board in cleaning the streets of the city, and removing offensive substances therefrom. The court held such to be a governmental duty on the ground that it tended to the preservation of the public health.

In our state, a municipal corporation was not held liable for injuries resulting from the negligent driving of a horse reel on its way to a fire in the city limits, although the fire department was under the direct management of the city and the driver in its employ. *Alexander v. City of Vicksburg,* 68 Miss. 564; *Berg v. Parsons,* 156 N. Y. 109; *Norfolk, etc., R. R. Co. v. Stevens, Admr.,* 46 L. R. A. 367; *McFadden v. Jewell,* 60 L. R. A. 401; *Uppington v. City of New York,* 165 N. Y. 222; *Herrington v. Lansingburg,* 110 N. Y. 145; *Smith v. Benick,* 42 L. R. A. 277; *Gros v. Portsmouth,* 73 Am. St. Rep. 586; *Haley v. City of Boston,* 77 N. E. 888; *Sutton et al. v. Police Commissioners,* 41 Miss. 236; *Wyatt v. Rome,* 70 Am. St. Rep. 41; *Leeds v. Richmond,* 102 Ind. 372, 36 L. R. A. 382; 2 Dillon Munic. Corp. (2d ed.) §§ 773, 801.

Mayes, J., delivered the opinion of the court.

The declaration states a perfect cause of action against the city, and the demurrer was improperly sustained. It made no difference to whom the sewerage system belonged. The thing causing the damage complained of was the act of the city in compelling its citizens to connect with same, thereby causing the

filth of the city to be poured upon the plaintiff's property to his great damage. It may be true that there is a joint liability, but that question is not now in this case; nor should it have had any influence in determining whether or not the demurrer should have been sustained or overruled.

The sewerage system, as such, without connection therewith being made by the citizens of the municipality, was harmless. It became harmful only when the city acted in the matter, and adopted it as its vehicle to carry away the filth of the city and empty it upon the property of the appellant. When the city did this, the system became as much its own system of sewerage, in so far as to make the city liable for the damage caused by its adoption, as it would have been had it actually owned it. There can be no taking or damaging of property for public use, under section 17 of the Constitution of 1890, without due compensation to the owner, and in volume 6 of the American and English Annotated Cases in footnote to be found on page 177, this character of case is said to fall within the provision. See, also, *Smith v. City of Sedalia,* 152 Mo. 283, 53 S. W. 907, 48 L. R. A. 711.

The rules of law applying to independent contractors have no application here. No damage is caused or complained of by reason of the construction of this sewerage system by the owners, under the franchise given them by the municipality. If a citizen could be thus damaged by the act of the municipality in using the sewerage to his detriment, the law would be inadequate in its protection of property rights. On page 177, 6 Am. & Eng. Ann. Cas., in the note, will be found a vast number of authorities on this subject. We have examined the cases cited by appellee; but it is our judgment that none of them sustain their contention under the facts here considered.

*Reversed and remanded.*