O. K. MABEN et al., Appellees, v. OLSON et al., Appellants.

WATERS AND WATERCOURSES: Natural Watercourses—Drain-
1 age Easement. The right to drain into a natural watercourse
is an easement appurtenant to the land, and all persons must
take notice that the exercise of such right may increase the
flow of water.

DRAINS: Natural Watercourse as Outlet—Damage to Lower Lands.
2 The Constitution and statute law of this state permit and au-
thorize the establishment of a public drainage improvement
in such manner that the waters of the district will be cast
into a natural watercourse in such increased volume and ac-
celeration that lands below the point of entrance may and
*probably* will be damaged.

DRAINS: Injury to Lower Landowners—Remedy. The remedy for
3 those who, being outside of and below a drainage district, will
be damaged by accelerated and increased flowage of flood wa-
ters in a natural watercourse *is to create another drainage dis-
trict.*

EQUITY: Inadequate Remedy at Law. Inadequacy of a remedy
4 distinctly provided by the legislature is no such ground as will
necessarily justify resort to a court of equity, even though
resort to the remedy provided may result in some damage. So
held in drainage proceedings.

DRAINS: Appellate Review. The legislature may validly authorize
5 boards of supervisors to establish drainage districts, without
providing appellate review of their decision.

DRAINS: Establishment—Appellate Review. The presumption of
6 rightfulness which attends the legislative act of establishing a
drainage improvement can be overcome only on the *clearest* of
proof.

*Appeal from Hancock District Court.*—M. F. EDWARDS,
Judge.

DECEMBER 12, 1919.

ON the petition of some of the defendants, the defend-
ant board proposed to construct a drainage improvement.
The plaintiffs' own lands lying on a lower level than the

proposed outlet of said improvement, they obtained an in-
junction restraining the construction of said improvement,
and defendants appeal.—*Reversed and remanded.*

*Ramsay & Blackstone,* for appellants.

*Senneff, Bliss, Witwer & Senneff,* for appellees.

SALINGER, J.—I.  Lime Creek is so located that the
water from the district in question naturally drains into
the creek, is a natural watercourse, and is what may be
deemed an inherent right to drain into such

1. WATERS AND
WATERCOURS-
ES: natural
watercourses:
drainage
easement.

a course.  In every natural watercourse
there is an easement for the benefit of all
land which naturally drains into the same.
*Chicago & N. W. R. Co. v. Drainage Dist.,*
142 Iowa 607.  The right of drainage along such a course
is an easement for the benefit of all land which naturally
drains into the same.  This right of drainage is a natural
easement appurtenant to the land through which it runs,
and every owner along such course must take notice of the
rights that others have in such easement. *Mason City & Ft.
D. R. Co. v. Board,* 144 Iowa 10.  It was held in *Kankakee
& S. R. Co. v. Horan,* 131 Ill. 288 (23 N. E. 621), and in
*Chicago, B. & Q. R. Co. v. People,* 212 Ill. 103 (72 N. E.
219), and in *Tretter v. Chicago G. W. R. Co.,* 147 Iowa 375,
that one who builds a road or a bridge across a natural
watercourse must make provision for the discharge of all
water that may flow through the watercourse or bridge,
though the amount of such water be afterwards increased
by the construction of drainage.  These are not, as appellee
contends, decisions bottomed on the duty of a railroad com-
pany to conform its roadbed to the requirement of such
public easements as ditches and drains, a duty incident to
its right to construct and maintain its road.  As we view
them, they hold that the right to drain into a natural
watercourse is an easement appurtenant to the lands, and

that all must take notice of the fact that the drainage may throw more water into that natural outlet.

We do not understand appellees to deny that Lime Creek is what we have just declared it to be. Their position is that there are limitations upon the use of such an easement, and that appellants have transcended such limitations. Appellees say, in argument, that defendants have gone beyond said limitations, because the enjoined improvement will, if permitted, burden servient estates, regardless of damage to them by collecting the water on part of a group of landowners above and discharge same upon the lower land in immensely increased quantities. There is testimony that the total volume which the proposed drainage system will cast into Lime Creek will be increased from 15 to 20 per cent, and that "not over 25% of the water which will go into Lime Creek if the improvement is completed would reach that creek if the land drained by the district were left in its natural state." We have grave doubts of the value of this testimony. But assume it to state a fact. On that assumption, we have merely a dispute over the effect of this testimony. As to this, the appellees contend that: (1) If the improvement be not stopped, it will occur that the flow into Lime Creek will become "accelerated"—the flow will be more rapid. (2) It may occur that more water will run into the creek than would go there if the improvement were not made. (3) This may cause an injurious overflow of lands belonging to the plaintiff, such as has not yet occurred, and cause overflow where before there was none. Appellants concede that the proposed improvement will accelerate the flow into Lime Creek; and the trial court declined to base the relief which it gave upon mere acceleration. It apparently has put its decree on the ground that the improvement would cause a more rapid flow, and also cause

*Margin note beside paragraph:* 2. DRAINS: natural watercourse as outlet: damage to lower lands.

a greatly increased quantity of water to find outlet in Lime
Creek.

The controlling question, then, is this: Is it unauthor-
ized and unlawful to establish a drainage district if so do-
ing will cause water to come into the natural outlet for the
district more rapidly and in greater quantity than if the
land in the district were left to send its surface water into.
said outlet without interference by a drainage system, and
it further appears that the increase in rapidity and volume
may overtax the natural outlet and cause a damaging over-
flow to lands below the entrance into such outlet?

If the Constitution of the state expressly authorized the
legislature to give power to boards of supervisors to do
what has just been described, and declared that the boards,
on such authority, might do this even if thereby lower lands
were overflowed, then, whatever might be said, it could
not be that the legislature had authorized doing, and that
a board of supervisors was about to do, something violative
of the Iowa Constitution. If the Constitution of the state
expressly empowered boards of supervisors to do certain
things with reference to drainage projects, and expressly
stated that these things might be done, no matter what the
consequences to lower lands would be, the doing of what the
defendant board is doing would, whatever it might be, not
lack for sanction by the Constitution. Now, that instru-
ment does not say, in express terms, that the legislature
may give power to boards of supervisors to drain lands into
a natural outlet; that it may do this though it increase the
speed and quantity of what will reach such outlet, and may
do this if thereupon shall arise a peril that lower lands
will be overflowed. That instrument says less than this,
and yet more than this. It is broader than this because,
while it does not in words permit such acceleration, in-
crease, or exposure to peril, it puts no limitation on the
power granted. So far as exercise of power violative of

the Iowa Constitution is concerned, if that instrument permitted boards of supervisors to do what these defendants propose to do, without providing any remedy for lower landowners or any compensation for them, the act of the board would still not be violative of the Iowa Constitution. As said, the constitutional provision has no limitations. The eighteenth amendment is plenary. It gives to the general assembly the power to pass laws, vesting in the proper authorities the power to construct and maintain levees, drains, and ditches, and to keep all drains heretofore constructed under the laws of the state in repair. Manifestly, nothing in this grant prohibits the legislature from empowering a board of supervisors to do just what appellees say the improvement in consideration here will do. Indeed, it has not, as we understand it, been suggested that what is proposed is violative of any constitution. So the next step in the inquiry is whether the legislature has authorized that which the defendant board proposes to do. Again, not in terms. Again, in terms so broad as to give the board power to do not only this thing, but much more. This breadth, once more, exists through want of limitation. The statute authority authorizes the boards of supervisors to establish drainage districts, and to cause ditches and drains to be constructed. Section 1989-a1, Code Supplement, 1913. And it is further enacted that all the provisions on drainage shall be construed liberally, to promote reclamation of wet, overflowed, agricultural lands by means of drainage. Idem, Section 1989-a46. Not only is this liberal construction imposed by statute mandate, but the courts have held, time and again, that the exercise of power under such delegation as this is in such sense a legislative act as that the courts will review the propriety of such act with the greatest reluctance only; that they will, in such review, stay within the narrowest possible lines, and will give all reasonable effect to the presumption that

the board has properly exercised the power to do such legislative act. It is unquestionable that primarily the board of supervisors has power to drain into a natural outlet. Primarily, the question whether draining into such outlet is a proper improvement harks back to the legislative aspect of the action; wherefore, it must be presumed in the first instance, with a presumption that is not easily rebuttable, that a drainage system taking water into a natural outlet is rightly established.

So the matter would seem to reduce itself to the inquiry whether so plenary a delegation of power, so strongly presumed, when exercised, to be rightly exercised, may be interfered with by a court of equity because, through its exercise, a more rapid and a greater flow will reach a natural outlet, to the possible or even probable injury of the lower owners. Not only is there this broad delegation and said presumption, but the power given would be, on the theory of appellee, to all practical intents and purposes, a prohibition to carry out the power. For power to establish drainage systems limited to such as will not accelerate and increase the flow is power to do a thing, provided the only object of doing it be not sought after or accomplished. Such acceleration and increased overflow is the cardinal purpose of draining agricultural lands. One cardinal object in authorizing the establishment of such system is to take from such lands water which, without the system, would remain on them until such water evaporated, if ever it did. To stop the establishment because it would eliminate this water more rapidly than such evaporation would, and would make, at times, a larger volume of water at the place where the outlet is entered, is, we repeat, giving a power with proviso that it shall not be used to accomplish the only purpose for which it is given. We can conceive of no way to drain lands which, without aid, continue too wet for successful cultiva-

tion, other than to take the waters from such lands more rapidly than evaporation will take them; and we are unable to see how they may thus be accelerated without its resulting that, at times, there will be a larger volume at the point of ingress into the natural outlet than there would be if the water were allowed to remain on the land until nature absorbed it. To put it in other words, if, after the establishment of the system, there were no greater flow of water at the point which is the natural outlet for the water theretofore standing on the lands, such absence of greater flow at the outlet would be due to the fact that no more water was taken from the lands than was taken before the system was established. This would operate that no drainage district is permissible, unless it will fail substantially to accomplish the only purpose for which the law authorized it to be established. Such construction of the statute would work there was power to gather waters standing on agricultural lands and to draw them from a single mouth into the natural outlet, but that the power given could be exercised only if, after the drainage system was created, the waters on the lands to be drained would, in the main, be still permitted to stay in those lands as they stood before the establishment of the system. Of course, this has not been the construction of such statutes. We said, in *Dorr v. Simmerson*, 127 Iowa 551, it does not matter that the opening of the ditch may have accelerated the flow of water which otherwise would have taken the longer route to the same ultimate point. In *Prichard v. Woodbury County*, 150 Iowa 565, at 580, 581, we held, in construing the statutes involved, that, because of authority under these statutes, "natural streams may be changed, and waters collected in one district of lands higher up the stream may be turned into ditches lower down, and the ditch thus used may be deepened or enlarged to meet the necessities of the case." And in *Mizell v. McGowan*, 120

N. C. 134 (26 S. E. 783), it is ruled that the owners of swamps the waters of which naturally flow into natural watercourses can make such canals in the swamps as are necessary to drain them of the water naturally flowing therein though, in so doing, the flow of water in the natural watercourse is increased, whereby the water is discharged on the land of a person abutting on such watercourse. The case of *Cech v. City of Cedar Rapids,* 147 Iowa 247, is against, rather than an aid to, appellant. In *Wharton v. Stevens,* 84 Iowa 107, and in *Vannest v. Fleming,* 79 Iowa 638, it is strongly intimated, if not clearly recognized, that the right to carry off the water by drainage exists though lower lands thereby suffer, and said that the denial of such right "would be productive of incalculable mischief." Indeed, our own decisions make a conclusive argument against the claims of the appellees at this point. And, as a capstone to those cases already adverted to, that of *Obe v. Pattat,* 151 Iowa 723, at 727, 728, is perfect. It is there said:

"The purpose and essence of drainage is to interfere with natural conditions as to surface water, to gather it into tiles or open ditches, and convey it to some place of discharge. If it is to be of any effect at all, the water cast from the mouth of the drain *must* be greater in quantity than would be discharged *at that point* under natural conditions," and if it were demanded that surface water shall not be discharged therefrom in any other manner or at any other place or in any other quantities than would characterize its flow were the land left in a state of nature, that that "would be to effectively block the progress of agricultural improvement over a very large part of the state."

We hold that this improvement should not be enjoined because it will both hasten the flow and augment it at the point where the water leaves Lime Creek.

**1-a**

The cases relied on in opposition to this holding cannot overcome those that support such holding.

All we can find in *Baker v. Incorporated Town of Akron*, 145 Iowa 485, is that a city may not collect its surface water and discharge the same unnaturally and 'in greater quantity upon and to the material injury of lands lying outside its limits, and causing an increased flow of water on the land of plaintiff, even though the damage was due to extraordinary floods, or though there be difficulty in determining the exact damage caused by the acts of the municipality. So far as relevant, *Gage v. City of Chicago*, 191 Ill. 210 (60 N. E. 896), holds that an ordinance which fails to provide necessary connections for sewers is void, because, under existing statutes, the city has no right to empty sewage on private property. The effect of *Pierce v. Gibson County*, 107 Tenn. 224 (64 S. W. 33, 37), is that a municipality may not throw sewage from a courthouse upon pastures of a private owner, and so affect his cattle and injure his occupation as a butcher. The cases of *Simmons v. Mayor, etc., of Paterson*, 60 N. J. Eq. 385 (45 Atl. 995), and *Thompson v. City of Winona*, 96 Miss. 591 (51 So. 129), in effect hold no more than that a municipality may not pollute a river by sewage, to the injury of riparian owners, without making the compensation provided in the Constitution for taking private property for public use. The cases of *State v. City of Concordia*, 78 Kan. 250 (96 Pac. 487), *Smith v. City of Sedalia*, 152 Mo. 283 (53 S. W. 907), and *Markwardt v. City of Guthrie*, 18 Okla. 32 (90 Pac. 26), but hold that, under the statute system in these respective states, municipalities may not pollute running water by conducting their sewage into same to the prejudice of the lower riparian proprietors, and must so plan and maintain their systems of sewerage as to provide against the creation of such nuisance, and that there is a liability for dam-

ages arising from such nuisance. The case of *City of Atlanta v. Warnock*, 91 Ga. 210 (18 S. E. 135), holds that, if a municipality goes beyond its authority, and injures private property by the opening of manholes and the loosing of poisonous gases, it is responsible for resulting damage. The cases of *Roe v. Howard County*, 75 Neb. 448 (106 N. W. 587), and *Pettigrew v. Village of Evansville*, 25 Wis. 223 (3 Am. Rep. 50), but hold that, except in the exercise of the power of eminent domain, a municipality has no greater right to injure a servient estate than has a private owner of higher lands. The cases of *Rudnyai v. Town of Harwinton*, 79 Conn. 91 (63 Atl. 948), and *Tate v. City of St. Paul*, 56 Minn. 527 (58 N. W. 158), involve complaints and holdings that legislative authority possessed by the board was improperly exercised; and it may be conceded, for the sake of argument, that, on the facts in those cases, there was warrant for so reviewing and holding. All we can find in *Hume v. City of Des Moines*, 146 Iowa 624, is that, if a city brings a street to grade, it must exercise reasonable care, and, if it unnecessarily or negligently fills ditches or drains in the street, and thus casts the surface water back on an adjacent lot, without the knowledge of the owner, and without giving him a reasonable time to bring his lot to grade, the city is liable for negligence in performing a purely ministerial act. We are unable to find anything relevant to the case before us in *People v. McDonald*, 264 Ill. 514 (106 N. E. 501). Whatever is relevant in *Bruggink v. Thomas*, 125 Mich. 9 (83 N. W. 1019), is founded on a concession by counsel. The decision in *Butler v. Peck*, 16 Ohio St. 344, would never have been made under our statutes; so of *O'Brien v. City of St. Paul*, 18 Minn. 176; and of *Flanders v. Franklin*, 70 N. H. 168 (47 Atl. 88), which, in addition, turned off on a practice point concerning the necessity for remand to the trial court.

It may be conceded that the cases of *McBridge v. City*

*of Akron,* 12 Ohio Cir. Ct. 610, and *Penfield v. City of New York,* 115 App. Div. 502 (101 N. Y. Supp. 442), give more or less support to the position of the appellees. We incline to think they rest upon statute conditions unlike the ones existing in this jurisdiction; and, at any rate, we think these cases are against the great weight of authority, and we decline to follow them.

II. Appellees invoke the maxim that there is no wrong without a remedy. The argument is based on the fact that, their lands lying without the district, they may not interfere in the proceedings to establish, nor object, and that, because the drainage district is not an entity which can be made liable in damages, no remedy lies in recovering damages. The ultimate argument is that, since, so, denial of their injunction will leave them remediless, conceding the power of the legislature, it should be held it did not intend to permit what would so leave the lower owner without remedy. Without so much as intimating that it is the fact, we may concede, for the sake of argument, that authorizing such action as is here complained of, without making provision for resulting damages, might be violative of fundamental law. All we are called upon to determine at this point is whether it was the legislative purpose to authorize what the defendants propose to do. Now, manifestly, it may be perfectly clear it was the purpose of the legislature to authorize something which is in violation of the Constitution. Surely, a confessedly unconstitutional act may be clear as to object. Conceding that some remedies are not provided, we still hold the legislature intended to authorize what these defendants are proposing to do. For one thing, to hold otherwise would prove too much. The owners of lower lands without the lines of a proposed district could always stop the organization of a district above them; for, in every case, damages could not be collected from the drainage district. In every

case, those without the district could not intervene in the proceedings to establish. Therefore, to hold with appellees that the legislature did not intend to give power to do what appellees are seeking to enjoin, is simply to hold that all drainage of upper lands is at the mercy of anyone owning lower lands, provided those lands are not included in the district.

We hold, further, that appellees are not denied all remedy. They, too, can move the creation of a drainage system that will relieve them of what might otherwise result from the creation of the defendant district. Surely, the injunction that has been obtained may not be sustained merely because the legislature has failed to provide certain remedies. While it is true an injunction may issue if there be no adequate remedy at law, it does not follow that it must issue in every case wherein the remedy is not as adequate as it might have been. Eliminate constitutional objections, and chancery will not intervene merely to better such remedy as the legislature has deemed sufficient.

2 DRAINS: injury to lower landowners: remedy.

4. EQUITY: inadequate remedy at law.

Giving the right to appeal from actions of boards in drainage matters is more of a remedy against improper action on part of such board than is the mere right to be heard before the board, and an appeal with review *de novo* is a better remedy than a closely restricted appeal. One of the cases relied on by the appellee, the *State v. Fisk*, 15 N. D. 219 (107 N. W. 191), is largely based on the fact that the statute has provided no appellate review. But we cannot accede to the reasoning. It was held, in *Wood v. Chamber of Commerce*, 119 Wis. 367 (96 N. W. 835), to be quite doubtful whether equity may intervene because no review is provided for the decision of a quasi judicial tribunal. We

are fully persuaded that the legislature may
validly authorize boards of supervisors to
establish drainage districts, even though it
provides no appellate review for their decision, or provides
a closely limited, rather than a *de novo* review. Appeals
permitted by the Compensation Act are most narrow. But
it will hardly be claimed that equity will regulate allow-
ances under the act. The power to vacate streets is ex-
pressly and exclusively put in cities and towns. So is
the power to establish drainage systems put in boards of
supervisors. We have held that, as to street vacation, the
courts have no power to intervene, and that it may be
urged, on appeal to the Supreme Court, for the first time,
that an injunction that interferes with the power to vacate
streets should be annulled; and upon this contention such
an injunction was annulled, because certiorari furnishes an
adequate remedy at law. *McLachlan v. Gray,* 105 Iowa 259,
at 261.

5. DRAINS: ap-
pellate review.

It may be true that the remedy of moving a new dis-
trict that will carry off any over-taxing by the upper dis-
trict will still cause appellees to suffer delay, and that there
may be injury to them during such delay. But that affords
no reason for blocking the exercise of a power given to the
defendants—a blocking which may cause great damage to
upper owners while the blocking continues—and no rea-
son for making rules that will practically nullify the pur-
poses of the law dealing with reclamation of agricultural
lands. A remedy is not necessarily inadequate, within the
law of injunctions, because such remedy may still leave a
temporary injury possible, if, while that is so, remedy by
injunction will be much more injurious to the upper land-
owner than is such temporary injury to the servient owner,
to say nothing of the interference with public policy by
such an injunction. See *Black v. Escher,* 186 Iowa 554. We
held, in *Stahl v. Board of Supervisors,* 187 Iowa 1342, that,

while delay might be caused by setting aside the establishment of a district, and so some injury might result, pending a re-establishment by proper methods, that such injury was no reason against setting the establishment aside. That being true, delay that will result from establishing a district to carry off their overflow should not operate to prevent the establishment of the upper district.

III.   And there is a spirited conflict on whether the powers which the statute has given the defendant board have been providently used.   Appellees contend the upper district might be established without doing

6. DRAINS: establishment: appellate review.

them the injury they complain of.   The appellants, on the other hand, contend that the board has done the only proper thing; that nothing else within reason would be effective; and that, if anything, Lime Creek will be less burdened when the new district is established than it was before.   For reasons already indicated, we must decline to go extensively into this controversy.   The act in review is legislative.   Practically every reasonable presumption is indulged that the board acted rightly.   The presumption must be met by the clearest of proof.   We find no such proof in this record.   See *Temple v. Hamilton County*, 134 Iowa 706; *Lyon v. Board*, 155 Iowa 367, 374.

It is our conclusion that the decree of the district court must be reversed.   The cause will be remanded for action in harmony with this opinion.—*Reversed and remanded.*

LADD, C. J., EVANS and PRESTON, JJ., concur.